UNITED STATES, Appellee,

v.

Brendan D. HOWARD, Private
First Class, U.S. Marine
Corps, Appellant.

No. 95–0690.
Crim.App. No. 93 1789.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 9, 1997.

Decided Sept. 12, 1997.

Gierke, J., filed concurring opinion.

Sullivan, J., filed opinion concurring in the result.

Crawford, J., filed dissenting opinion.

For Appellant: *Lieutenant Commander Howard B. Goodman*, JAGC, USN (argued).

For Appellee: *Captain Christopher N. Hamilton*, USMC (argued); *Colonel Charles Wm. Dorman*, USMC, and *Commander D.H. Myers*, JAGC, USN (on brief); *Colonel J. Composto*, USMC, and *Lieutenant Kevin L. Flynn*, JAGC, USNR.

*Opinion of the Court*

EFFRON, Judge:

A military judge sitting as a special court-martial at Camp Pendleton, California, convicted appellant, pursuant to his pleas, of absence without leave (AWOL and UA), in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. He sentenced appellant to a bad-conduct discharge, confinement for 75 days, forfeiture of $400.00 pay per month for 3 months, and reduction to the lowest enlisted grade. The convening authority approved these results and, pursu-

ant to a pretrial agreement, suspended all confinement for 12 months. The Court of Criminal Appeals affirmed in an unpublished opinion.

On appellant's petition, we granted review of the following issue:

WHETHER SUBSTITUTE DEFENSE COUNSEL'S FAILURE TO CONTACT HIS CLIENT (AND THUS ESTABLISH AN ATTORNEY–CLIENT RELATION-SHIP) PRIOR TO COUNSEL'S RE-VIEW OF, AND RESPONSE TO, THE STAFF JUDGE ADVOCATE'S POST–TRIAL RECOMMENDATION IS AN ERROR THAT SHOULD BE TESTED FOR PREJUDICE.

We hold that prejudicial error occurred and that, under the circumstances of this case, remedial action is necessary.

## I

Appellant's trial concluded on November 23, 1992. Defense counsel left active duty at some point between December 7, 1992—when she examined the record of trial—and January 22, 1993—when a judge advocate was detailed to serve as substitute defense counsel to represent appellant's post-trial interests. *See* RCM 1106(f)(2), Manual for Courts–Martial, United States (1995 ed.). Substitute counsel, however, did not contact appellant or ever enter into an attorney-client relationship with appellant, as he was required to do under RCM 1106(f)(2). *See United States v. Palenius*, 2 MJ 86 (CMA 1977).

Notwithstanding his failure to comply with RCM 1106(f)(2), substitute counsel accepted service of the record of trial on January 22 and indicated that he would submit clemency matters under RCM 1105. Sometime thereafter, substitute counsel forwarded to the convening authority a clemency form that appellant had provided to his original defense counsel at the conclusion of trial. The form contains check marks in two boxes reading "I request clemency, as indicated:" and "Remission of punitive discharge and separation with a general discharge," as well as appellant's handwritten "reasons for the above requests," stating: "A bad-conduct discharge

would adversely effect [sic] my future. I know I was wrong to go UA but I feel I can be productive in the future."

On June 7, 1993—almost 6 months after the military judge had authenticated the 43–page record of trial (December 13, 1992)—the staff judge advocate (SJA) completed his post-trial recommendation and sent it to substitute defense counsel. Three days later, substitute counsel initialed a pre-printed endorsement that stated, "I *DO NOT* have comments or corrections to submit per RCM 1106." On July 13, 1993, the convening authority approved the sentence as modified pursuant to the pretrial agreement, without granting any further clemency. The record of trial contains nothing that would explain the failure of substitute counsel to contact the servicemember that he was detailed to represent.

## II

■ Last term, this Court held that failure of designated substitute defense counsel to enter into an attorney-client relationship with an accused during the period between the end of trial and the convening authority's action did not constitute error that was reversible *per se* as a denial of counsel at a critical stage but, instead, was an error that could be tested for prejudice. *United States v. Miller*, 45 MJ 149 (1996); *cf. United States v. Hickok*, 45 MJ 142 (1996). Appellant takes the position that "*Miller* was wrongly decided and should be overruled." Final Brief at 4. According to appellant, the designated substitute counsel

was not appellant's attorney. He was not authorized by appellant to appear on his behalf. Appellant was entitled to a lawyer who would consult him before reviewing the staff judge advocate's recommendation.... Acceptance of the attorney by the client is an absolute necessity to the establishment of an attorney-client relationship. [*United States v.*] *Iverson*, 5 MJ [440,] 443 [(CMA 1978)]. [Substitute counsel's] failure to contact appellant left appellant entirely without legal representation during a crucial stage of the post-trial processing of his court-martial. A new convening au-

thority's action is required without regard to prejudice.

Final Brief at 5–6.

The Government defends the test-for-prejudice holding of *Miller* as the "better analytical approach" on the grounds that, "if real prejudice cannot be demonstrated, then there is little sense in wasting valuable judicial resources to 'correct' a case that is otherwise error-free." Answer to Final Brief at 5. The Government argues also that the appropriate test is the ineffective-assistance-of-counsel analysis of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

*Strickland* requires that an appellant demonstrate that his defense counsel's performance was professionally deficient and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [1] *Id.* at 694, 104 S.Ct. at 2068. Government counsel contends that appellant's claim fails under *Strickland* "because he has not affirmatively proven that his substitute defense counsel's performance was deficient and that but for the deficiency the result would have been different." Answer at 22–23.

We are not persuaded that *Strickland* provides the appropriate test for prejudice in a case where there is no attorney-client relationship. *Strickland* is based on the unique nature of the attorney-client relationship and the reluctance of the Court to insert itself freely into the dynamics of that relationship. A servicemember who never has had the benefit of an attorney-client relationship, however, should not be required to meet the heavy burden imposed by *Strickland* when there is a complaint, reasonable on its face, about the performance of a lawyer that the servicemember never accepted.

The appropriate test for prejudice in this context is the *generally applicable standard*

prescribed by Congress in Article 59(a), UCMJ, 10 USC § 859(a):

> A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.

We apply this test here in the context of the broad powers of the convening authority—powers that virtually are unfettered when acting in an accused's behalf, *see United States v. Leaver*, 36 MJ 133, 136 (CMA 1992); *United States v. Moseley*, 35 MJ 481, 484–85 (CMA 1992), and that provide an accused's best hope for post-trial relief, *see United States v. Jones*, 36 MJ 438, 439 (CMA 1993). We also are mindful of the routine and fundamental nature of the expectation that an attorney will act affirmatively to establish an attorney-client relationship before proceeding to act purportedly in the client's behalf. *See, e.g.,* Rules 1.2 (Scope of Representation) and 1.4 (Communication), ABA Model Rules of Professional Conduct; Rules 1.2 (Establishment and Scope of Representation), 1.3 (Diligence), and 1.4 (Communication), Rules of Professional Conduct, JAG-INST 5803.1 (13 July 1992). This legal and ethical expectation is an everyday characteristic of the practice of law and is not a burdensome one to fulfill. When an accused's best hope for relief, which often depends upon the dynamics of the moment, is eviscerated by failure of his designated substitute counsel to satisfy such an ordinary but critical professional expectation, this error should not be compounded by an unnecessarily heavy appellate burden in order to obtain relief.

Recently, in *United States v. Chatman*, 46 MJ 321 (1997), we addressed the question of the applicable appellate standard when an SJA fails to serve on the defense a copy of an addendum that contains "new matter" to which an accused has the right to notice and opportunity to respond. *See* RCM 1106(f)(7). In that context, we commented:

> minative" showing that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S.Ct. at·2067.

---

1. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defense is not required to make an "outcome-deter-

We are no longer confident that returning cases for a new recommendation and action is a productive judicial exercise in the absence of some indication that the information presented to the convening authority on remand will be significantly different. 46 MJ at 323. We concluded that,

> for all cases in which a petition for review is filed after the date of this decision asserting that defense counsel have not been served with an addendum containing new matter, we will require appellant to demonstrate prejudice by stating what, if anything, would have been submitted to "deny, counter, or explain" the new matter. *See* Art. 59(a), UCMJ, 10 USC § 859(a) (error must materially prejudice substantial rights of accused). We believe that the threshold should be low, and if an appellant makes some colorable showing of possible prejudice, we will give that appellant the benefit of the doubt and "we will not speculate on what the convening authority might have done" if defense counsel had been given an opportunity to comment. [*United States v.*] *Jones*, 44 MJ [242,] 244 [ (1996) ]; *see United States v. DeGrocco*, 23 MJ 146, 148 (CMA 1987).

*Id.* at 323–24.

We believe that the same considerations should apply in a case involving failure to serve the original recommendation on defense counsel or on substitute counsel who, under *Miller*, has "the legal responsibility to protect appellant's post-trial interests." 45 MJ at 151. For all cases in which a petition for review is filed after the date of this decision asserting that substitute counsel failed to establish an attorney-client relationship, an appellant must make the same showing as required by *Chatman* as to what he or she would have said in response to the SJA's recommendation. We will apply the same threshold established by *Chatman* regarding what showing will be satisfactory to trigger a remand for a new recommendation and action.

### III

■ Because the foregoing requirements are prospective in nature, we will review appellant's case in light of our earlier precedents. In *Miller,* we observed that the lower court found that the appellant had not been prejudiced by the error on the basis of his failure to make any showing at all to that court what he would have submitted to the convening authority in response to the recommendation. We also noted in *Miller* that the appellant's trial defense counsel had "submitted a rather substantial clemency package to the convening authority" before he left active duty. 45 MJ at 150.

This case is different from *Miller.* Here, no counsel—original defense counsel or substitute counsel—filed anything affirmative in appellant's behalf except for the cursory clemency form that appellant had provided his detailed defense counsel immediately after trial. In the post-trial setting, an appellant is dependent upon counsel with respect to determining the appropriate timing for a submission and for assistance in preparing a submission. In this case, at that critical point in time, substitute counsel failed to make any contact at all with his client in order to establish a proper attorney-client relationship and declined to submit anything in his client's behalf.

Based on this record, it appears that counsel could have made a presentation of some substance to the convening authority. Defense counsel had made a sentencing argument at trial that could well have been the starting point for attorney-client discussions between appellant and substitute counsel regarding what to submit to the convening authority post-trial. Appellant pleaded guilty, which is recognized as the first step toward rehabilitation. He had no nonjudicial punishments or previous convictions, and other than a single occasion of disorderly conduct, there was no record of civilian charges or incidents. He was engaged and had two children, ages 5 and 17 months, whom he supported. Additionally, he tried to financially help his grandmother, who raised him; in fact, while AWOL, he lived with his grandmother and had a job in order to help her out. His plans for the future were to "[g]o back home, get my job back,

get married, take care of my kids, and help take care of my grandmother, too."

The issue before this Court is not whether such a presentation would have persuaded the convening authority to grant clemency in this case. Rather, it is whether there is a "colorable showing of possible prejudice" that warrants remand of the record for a new recommendation and an opportunity for appellant to respond to the recommendation before the convening authority acts. Based on the foregoing discussion, we hold that the requisite showing has been made.[2]

## IV

The decision of the United States Navy–Marine Corps Court of Criminal Appeals and the convening authority's action are set aside. The record of trial is returned to the Judge Advocate General of the Navy for submission to a different convening authority for a new SJA's recommendation and action. Thereafter, Articles 66 and 67, UCMJ, 10 USC §§ 866 and 867 (1994), respectively, shall apply.

Chief Judge COX concurs.

GIERKE, Judge (concurring):

I agree with the principal opinion and its announcement of a prospective rule requiring an appellant to show prejudice. I write separately to explain why I have deviated from my opinion in *United States v. Miller,* 45 MJ 149, 152 (1996).

In *Miller* I took the position that failure of substitute counsel to comply with RCM 1106(f)(2), Manual for Courts–Martial, United States, 1984, amounted to an absence of counsel. Upon further reflection, I have concluded that my position in *Miller* may have been too technical and that the real error in this case is failure of defense counsel to consult with the accused about defense submissions under RCM 1105 and 1106. *See United States v. Hood,* 47 MJ 95, 97 (1997). An error founded in defense counsel's failure to consult with the client may be tested for

prejudice. *Id.* I agree with the principal opinion that in this case there has been a "colorable showing of possible prejudice." *See United States v. Moseley,* 35 MJ 481, 486 (CMA 1992) (Gierke, J., concurring in part and dissenting in part). Accordingly, I join in ordering a new recommendation and action.

SULLIVAN, Judge (concurring in the result):

In my view, the majority holding in *United States v. Moseley,* 35 MJ 481 (CMA 1992), is the better view. A military accused should not be denied an effective attorney at this critical stage of the proceedings.

CRAWFORD, Judge (dissenting):

I agree with the majority's application of Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a), but would reach a different result. *United States v. Chatman,* 46 MJ 321, 324 (1997)(Crawford, J., concurring in the result). Appellant refused to submit any information to this Court or the court below to show possible prejudice. Thus, I would find that any error was harmless. *See United States v. Catalani,* 46 MJ 325, 330 (1997)(Crawford, J., dissenting); *United States v. Mark,* 47 MJ 99, 103 (1997)(Crawford, J., dissenting).

Appellant's nearly 10 months of unauthorized absence from his unit at Camp Pendleton, California, was terminated by a civilian arrest for disorderly conduct in St. Louis, Missouri. Appellant could have been charged with desertion terminated by apprehension, for which the maximum punishment would have been a dishonorable discharge, total forfeitures, and confinement for 3 years. Para. 9e(2)(a), Part IV, Manual for Courts–Martial, United States (1995 ed.). Instead, appellant was charged with unauthorized absence terminated by an apprehension, for which the maximum punishment was a dishonorable discharge, total forfeitures, and confinement for 18 months. Para. 10e(2)(d),

2. We decline appellant's invitation to overrule this Court's recent decision in *United States v. Miller,* 45 MJ 149 (1996), particularly because

we have no need to consider doing so in light of our finding of prejudice in this record.

Part IV, Manual, *supra.* Rather than being referred to a general court-martial, this case was referred to a special court-martial authorized to adjudge a bad-conduct discharge. The convening authority entered into a pretrial agreement which resulted in no confinement taking effect. Appellant was placed on excess leave pending this appeal, which allows him to have medical, commissary, and post exchange benefits.

At the end of appellant's court-martial, he requested that his copy of the record of trial be served on Captain V. That same day, he gave Captain V a signed request entitled "request for restoration/clemency" in which appellant requested a Navy clemency and parole board to remit his punitive discharge and separate him with a general discharge.

Sometime later, Captain V left active duty and a substitute counsel, First Lieutenant H, was appointed. H was served with appellant's copy of the record of trial on January 22, 1993, and indicated he would submit matters pursuant to RCM 1105, Manual, *supra.* When H was served with the Staff Judge Advocate's recommendation on June 10, 1993, he indicated on the receipt for service: no comments or corrections. Nevertheless, he did submit the clemency statement signed by appellant, but we do not know its contents since it was not attached. On July 13, 1993, pursuant to a pretrial agreement, the convening authority approved the sentence and suspended all confinement. H never contacted appellant and only submitted the clemency package appellant had signed.

The court below ordered the defense to submit the matters they would have given to the convening authority. Other than commenting on his military records, as of this late date, they have not submitted any information on appellant's behalf.

This Court needs to allow some room for the possibility that counsel, based on reasoned judgment, would take no action in the case. Neither a court nor judge nor counsel needs to undertake a futile action. Inaction may constitute a legitimate post-trial strategy as demonstrated by actions of the convening authorities in prior cases. *Cf. Siverson v. O'Leary,* 764 F.2d 1208, 1216 (7th Cir.1985); *Warner v. Ford,* 752 F.2d 622, 625 (11th Cir.1985).

Failure to take action because of the past record of the convening authority should be done with consultation with the accused. Inaction may be based on objective observation of no action being reasonable. However, that does not mean that counsel was not active in deciding what to do in a particular case. Thus, the question of representation is not easily reducible to some physical activity. Silence or inaction can be a legitimate mode of representation.

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). There may be "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984).

One of the most important post-trial rights that a military defendant has is the right to counsel free of charge. I do not condone the handling of appellant's case or the failure of substitute counsel to contact appellant. However, appellant has not met his burden of showing what additional matters would have been submitted to the convening authority. Based on the benevolent actions of the convening authority in referring this case to a special court-martial and entering into a favorable deal, there is no evidence that appellant has been substantially prejudiced by the actions of substitute counsel.

I would affirm the decision below.