### UNITED STATES

v.

**McDonald A. SMITH, Corporal (E–4), U.S. Marine Corps.**

**NMCCA 200200339.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 5 Sept. 2001.

Decided 22 Sept. 2003.

CDR Tracy B. Calabrese, JAGC, USNR, Appellate Defense Counsel.

LT Ross W. Weiland, JAGC, USN, Appellate Government Counsel.

CDR Joseph E. Stolasz, JAGC, USNR, Appellate Government Counsel.

Before FINNIE, Senior Judge, CARVER, Senior Judge, and RITTER, Appellate Military Judge.

RITTER, Judge:

A military judge, sitting as a special court-martial, tried the appellant on 5 September 2001. Consistent with his pleas, the appellant was convicted of conspiracy to distribute methamphetamine and distribution of methamphetamine, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 912a. The military judge sentenced the appellant to confinement for 150 days, forfeiture of $600.00 pay per month for 5 months, reduction to pay grade E–1, and a bad-conduct discharge.

We have carefully considered the record of trial, the assignment of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Issue

Where a special court-martial record of trial does not include proof of service of the staff judge advocate's recommendation (SJAR) on trial defense counsel, does RULE FOR COURTS MARTIAL 1107(d)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.) prevent the convening authority from approving, and this court from affirming, a bad-conduct discharge?

### Service of SJAR on Trial Defense Counsel

Although there is no indication in the record that the SJAR was actually served on the trial defense counsel in this case, the timing of events in the post-trial process suggests that it was served. The appellant was court-

martialed on 5 September 2001, and the SJAR was signed nearly three months later, on 29 November 2001. The trial defense counsel submitted a clemency request pursuant to R.C.M. 1105 shortly thereafter, on 6 December 2001, during the 10–day statutory response period provided by R.C.M. 1106(f)(5). An addendum to the SJAR was signed on 11 December 2001. The convening authority then acted on 7 January 2002, specifically noting that he considered the defense counsel's clemency request.

On appeal, the appellant moved this court to order the Government to produce documentation establishing proof of service of the SJAR on the trial defense counsel. This court so ordered, but the Government responded that it was unable to comply, as no copy of this document was found in the Government's possession.

The appellant contends that R.C.M. 1107(d)(4) prohibits the convening authority from approving the bad-conduct discharge (BCD), because the record of trial failed to contain proof of service of the SJAR on the trial defense counsel, as required by R.C.M. 1103(c)(1). He requests that this court set aside the discharge, or remand the case to the convening authority with instructions that no BCD may be approved without complying with the requirements of R.C.M. 1103(c)(1). We decline to do so for the reasons that follow.

### Rule

The appellant's argument depends on a literal reading of R.C.M. 1107(d)(4). Prior to the 2002 Amendments to the Manual for Courts–Martial, that subsection stated as follows [1]:

(4) *Limitations on sentence based on record of trial.* If the record of trial does not meet the requirements of R.C.M. 1103(b)(2)(B) or (c)(1), the convening authority may not approve a sentence in excess of that which may be adjudged by a special court-martial, or one which includes a bad-conduct discharge.

This provision is clearly designed to limit the punishment that a convening authority may approve when the record of trial is not prepared in accordance with certain requirements, listed in either R.C.M. 1103(b)(2)(B) or (c)(1). The first reference deals with general courts-martial, while the latter deals with special courts-martial.

For general courts-martial, R.C.M. 1103(b)(2)(B) requires a verbatim written transcript of the trial proceedings whenever a bad-conduct discharge is adjudged, or when any part of the sentence exceeds 6 months confinement or other punishments which may be adjudged by a special court-martial. Thus, as to general courts-martial, R.C.M. 1107(d)(4) merely acts as an enforcement mechanism for the requirement of a verbatim transcript. If a verbatim transcript is not prepared, the convening authority is only authorized to approve the amount of punishment falling below the threshold for the verbatim record requirement.

The second reference in R.C.M. 1107(d)(4) applies to special courts-martial, and thus to this case. That reference is to R.C.M. 1103(c)(1), which deals with the preparation of records of trial for special courts-martial in which a bad-conduct discharge is adjudged. Prior to the 2002 Amendments to the Manual for Courts Martial, it stated as follows [2]:

---

1. R.C.M. 1107(d)(4) was changed by the 2002 Amendments to read as follows:

   (4) *Limitations on sentence based on record of trial.* If the record of trial does not meet the requirements of R.C.M. 1103(b)(2)(B) or (c)(1), the convening authority may not approve a sentence in excess of that which may be adjudged by a special court-martial, or one that includes a bad-conduct discharge, **confinement for more than six months, forfeiture of pay exceeding two-thirds pay per month, or any forfeiture of pay for more than six months.** (emphasis added).

   We note that the new language maintains the same cap on punishment as before whenever this

provision applies, despite the greater punishments now authorized at special courts-martial by the 2002 Amendments. While the Amendments and the change to this Rule were not effective during the post-trial processing of this case, we view the legal analysis as the same regardless of which version of R.C.M. 1107(d)(4) may apply to a given case.

2. R.C.M. 1103(c)(1) was changed by the 2002 Amendments to the Manual for Courts Martial to read as follows:

   (1) *Involving a bad-conduct discharge, confinement for more than six months, or forfeiture of pay for more than six months.* The require-

(c) *Special courts-martial*

(1) *Involving a bad-conduct discharge.* The requirements of subsections (b)(1), (b)(2)(A), (b)(2)(B), (b)(2)(D), and (b)(3) of this rule shall apply in a special court-martial in which a bad-conduct discharge has been adjudged.

The five referenced subsections of R.C.M. 1103(b) include not only the requirement for a verbatim record, but **every other** administrative requirement for compiling a record of trial in a special court-martial in which a bad-conduct discharge is adjudged. The fifth reference, R.C.M. 1103(b)(3), lists "Matters attached to the record," and specifically requires that proof of service of the SJAR on defense counsel be attached to the record. R.C.M. 1103(b)(3)(G).

### Discussion

■ The appellant makes an interesting argument; that is, even though case law requires that a failure of the record of trial to contain proof of service of the SJAR on trial defense counsel must be tested for prejudice prior to granting any relief, the language of R.C.M. 1107(d)(4), combined with its reference to R.C.M. 1103(c)(1), may be read to say that such a deficiency automatically bars a **special** court-martial convening authority from approving a bad-conduct discharge. Moreover, by this argument, a special court-martial convening authority would be prohibited from approving such a discharge if **any** document or matter required by R.C.M. 1103 is missing from the record, including "matters attached to the record" not defined by that Rule as part of the complete record. Finally, for cases considered after the effective date of the 2002 Amendments to the Manual for Courts Martial, the appellant's argument would also support an absolute prohibition against approving any confine-

ment and forfeitures in excess of six months adjudged at a special court-martial, whenever any required matter or document is missing from the record of trial, regardless of whether or not the omission is substantial.

While this court has had occasion in the past to address the effect of R.C.M. 1107(d)(4) on cases such as the appellant's [3], to our knowledge this issue has not been addressed directly by our superior court. Our previous cases suggest, without holding, that R.C.M. 1107(d)(4) was inartfully drafted, creating a "vexatious interplay" [4] with R.C.M. 1103 that leads to absurd results. We believe it is time to address the issue squarely.

Read literally, R.C.M. 1107(d)(4)'s reference to R.C.M. 1103(c)(1) and the latter provision's reference to five other subsections effectively change these five subsections into a "zero tolerance" standard for any defect in the record of a special court-martial. We reject such a literal reading and find that R.C.M. 1107(d)(4) was intended to enforce an identical requirement for records of trial in both general and special courts-martial. That is, a verbatim transcript must be prepared whenever the adjudged punishment either includes a bad-conduct discharge or exceeds the jurisdiction of a special court-martial as it existed prior to the 2002 Amendments to the Manual for Courts Martial. We reach this conclusion by: 1) applying the "whole statute" principle of statutory interpretation to construe R.C.M. 1107(d)(4) consistently with other relevant Rules for Courts–Martial; 2) considering the drafters' intent as indicated by the Analysis and Discussion to R.C.M. 1107(d)(4); and 3) comparing our interpretation with established case law. We discuss each point, in order, below.

---

ments of subsections (b)(1), (b)(2)(A), (b)(2)(B), (b)(2)(D), and (b)(3) of this rule shall apply in a special court-martial in which a bad-conduct discharge, **confinement for more than six months, or forfeiture of pay for more than six months,** has been adjudged. (emphasis added).

3. *See United States v. Mayville,* 32 M.J. 838, 841 (N.M.C.M.R.1991)(holding R.C.M. 1103(b)(3) "matters to be attached to record" not part of "complete record" for purposes of R.C.M. 1107(d)(4)'s predecessor (d)(3) with respect to

general courts-martial), *rev. denied,* 33 M.J. 489 (C.M.A.1991); *see also United States v. Testori,* 35 M.J. 745, 748 (N.M.C.M.R.1992)(holding lack of proof of service of SJAR and record on trial defense counsel no bar to convening authority approving bad-conduct discharge).

4. *United States v. Grogg,* N.M.C.M. 902675 (N.M.C.M.R. 13 June 1991) (unpublished op.)(referring to "this vexatious interplay between R.C.M. 1107 and R.C.M. 1103(b)(3) and (c)(1)")

### 1. Consistent Construction of the Rules

In our view, the appellant's argument misconstrues the intended effect of R.C.M. 1107(d)(4) by focusing on an ambiguity in the Rules. We reach this conclusion, in part, by construing the Rule in connection with other relevant sections of the Rules for Courts-Martial to produce a harmonious whole. *See* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.05 (6th ed.2000)(statute should be construed as a whole, each part harmonized in accordance with entire legislative scheme of which it is a part).

The intent of R.C.M. 1107(d)(4) is fairly obvious insofar as it purports to prevent a convening authority from approving a bad-conduct discharge—or for cases after the 2002 Amendments, punishments in excess of six months—unless certain administrative requirements are met. However, the Rule does not explain those requirements on its face, but instead incorporates by reference two other provisions. In so doing, it introduces either ambiguity (our view), or in the alternative, inconsistent and arbitrary results.

#### A. The Ambiguity

What we view as ambiguity is created by R.C.M. 1107(d)(4)'s incorporating by reference two provisions of R.C.M. 1103. As we have already noted, the clear effect of the first reference is to limit the convening authority's power to approve general courts-martial punishments depending only on whether or not a verbatim transcript has been prepared. However, in reading the second reference, concerning special courts-martial, there appears to be a disconnected thought between the Rule and its reference. This second reference, to R.C.M. 1103(c)(1), is not to a specific **rule** concerning the preparation of records of trial, as was the case with the first reference involving general courts–martial. Rather, R.C.M. 1103(c)(1) describes a **category** of special courts-martial-those "[I]nvolving a bad-conduct discharge." This subsection is not self-explanatory, but cites five more subsections, which together list all the requirements for compiling a special court-martial record of trial in which a bad-conduct discharge has been adjudged. Thus, since R.C.M. 1107(d)(4)'s two references differ in their purposes, the apparent effect of incorporating them by reference is to create a specific rule for general courts-martial (requiring verbatim transcripts) and a broad, general rule for special courts-martial (requiring a complete record of trial in every respect). Moreover, this reading of R.C.M. 1107(d)(4) contradicts the overall scheme for preparing records of trial in different types of courts-martial.

#### B. The General Scheme of R.C.M. 1103

The rules for preparing records of trial for all types of courts-martial are set out in R.C.M. 1103. Generally speaking, its requirements for documenting the proceedings at trial increase commensurate to the power of a court-martial to adjudge greater punishment. One obvious rationale is that, as greater punishment is adjudged, the record must allow for closer scrutiny on appeal. The appellant's interpretation of R.C.M. 1107(d)(4) would reverse this order and contradict R.C.M. 1103's general scheme, by enforcing a more stringent compliance with these requirements for special courts-martial records of trial than for those of general courts-martial.

#### C. R.C.M. 1103(f)

The appellant's interpretation of R.C.M. 1107(d)(4) contradicts not only the general scheme of Rule 1103, but also the plain language of a provision that discusses the same subject matter; that is, R.C.M. 1103(f). This is especially significant since the Discussion under R.C.M. 1107(d)(4) specifically invites a comparison of the two provisions, stating only *"See also* R.C.M. 1103(f)." Rule 1103(f) provides that when, because of the loss of notes or recordings of the proceedings (or other reasons), **"a verbatim transcript cannot be prepared** when required by subsection (b)(2)(B) or (c)(1) of this rule," the convening authority may "approve only so much of the sentence [as] could be adjudged by a special court-martial, except that no bad conduct-discharge may be approved[,]" or in the alternative, direct a rehearing as necessary

to allow for a verbatim transcript. (Emphasis added.)

We note that R.C.M. 1103(f) clearly states a limitation on the convening authority's power to approve punishments based **only** on the requirement to make a verbatim transcript, and is effective for both general and special courts-martial. This is a strong indication that R.C.M. 1107(d)(4) was intended to provide a consistent rule under R.C.M. 1107, entitled "Action of the Convening Authority." We also note that Rule 1103(f) refers to "(c)(1)" for exactly the same purpose that R.C.M. 1107(d)(4) does, under our interpretation; that is, as a short-hand way of identifying a category of cases to which the Rule applies, and not as an attempt to incorporate the full meaning of all five R.C.M. 1103 subsections contained in (c)(1). This is clear, because the sole purpose of R.C.M. 1103(f) is to describe the consequences of the lack of a verbatim transcript, and four of the five subsections referenced in (c)(1) have no bearing on that point. The result is that R.C.M. 1103(f) and R.C.M. 1107(d)(4) are companion provisions, providing a consistent rule for dealing with non-verbatim transcripts in the two parts of the Rules for Courts–Martial that deal with the preparation of the record of trial (1103) and the convening authority's action (1107). In our view, the clarity of R.C.M. 1103(f) fully explains the ambiguity of R.C.M. 1107(d)(4).

*D. Internal Consistency of R.C.M. 1107(d)(4)*

Finally, R.C.M. 1107(d)(4)'s specificity as to general courts-martial argues for interpreting any ambiguity in the Rule's application to special courts-martial in a consistent manner. The provision it references for general courts-martial is clear and specific, and cannot reasonably be construed to require anything more than a verbatim transcript. Therefore, the only interpretation of R.C.M. 1107(d)(4) that is internally consistent, and harmonizes with both R.C.M. 1103(f) and the general framework of R.C.M. 1103, is one that enforces the single requirement for a verbatim transcript whenever a bad-conduct discharge is adjudged, in both general and special courts-martial.

**2. Drafter's Intent**

We also find that the appellant's interpretation of R.C.M. 1107(d)(4) is contrary to the drafter's stated intent, as indicated by the Analysis and Discussion of the Rule. As noted above, the Discussion under R.C.M. 1107(d)(4) merely cites the reader to R.C.M. 1103(f). The latter Rule discusses the limitation on a convening authority's power to approve punishments only in terms of a requirement for a verbatim transcript, regardless of the type of court-martial involved. The Analysis leads us to the same conclusion; that is, that the drafters intended R.C.M. 1107(d)(4) to limit the punishment approved at both general and special courts-martial based only on the lack of a verbatim transcript.

R.C.M. 1107(d)(4) first appeared in the original 1984 Manual for Courts–Martial as 1107(d)(3), and the Analysis simply stated: "Subsection (3) is based on Articles 19 and 54(c)(1) and on the third sentence of paragraph 82*b*(1) of MCM, 1969 (Rev.)." MCM, (1984) at A21–74. Thus, R.C.M. 1107(d)(4) was not carried over from a provision of the prior Manual for Courts–Martial; rather, it was a new provision "based on" two UCMJ Articles and one sentence from the previous Manual. The fact that the Manual did not explicitly mandate the disapproval of a bad-conduct discharge for a minor omission in a special court-martial record of trial for the first 33 years of its existence, strongly suggests that the drafters could not have intended R.C.M. 1107(d)(4) to create such a rule, unless it unambiguously stated an intent to do so.

The Analysis' first two cited authorities, Articles 19 and 54 of the UCMJ, 10 U.S.C. §§ 819 and 854, refer to the jurisdiction of a special court-martial and the preparation of the record of trial, respectively. Both require that in any special court-martial in which a bad-conduct discharge is adjudged, "a complete record of the proceedings and testimony" must be made. Article 54(c)(1), UCMJ, simply states the requirement in general terms, without further definition of a "complete" record, or specifying any penalty for failing to make one.

Article 19, UCMJ, defines the jurisdiction of special court-martial, and includes the specific limitation upon which R.C.M. 1107(d)(4) is apparently based. When the Rules for Courts–Martial were drafted, Article 19, UCMJ, stated in pertinent part:

A bad-conduct discharge may not be adjudged unless a complete record of the proceedings and testimony has been made, counsel having the qualifications prescribed under section 827(b) of this title (article 27(b)) was detailed to represent the accused, and a military judge was detailed to the trial . . .

According to the language of the text, Article 19, UCMJ, is concerned with the **necessary preconditions** for a special court-martial's jurisdictional power to **adjudge** a bad-conduct discharge. It therefore does not refer to the administrative requirements for preparing a record of trial, which, of course, occurs after a sentence has been adjudged. It also does not state any limitation on the convening authority's power to **approve** sentences.[5] Rather, by requiring a "complete record of the proceedings and testimony" before a discharge can be **adjudged,** it establishes the need for recorder's notes or a recording device that will permit a complete record of the in-court proceedings to be prepared.

Indeed, the early Court of Military Appeals cases discussed Article 19's requirement for a "complete record of the proceedings and testimony" only in terms of the completeness of the **written transcript.** For 30 years, the cases interpreting Article 19's "complete record" requirement made no reference to the Manual's other administrative requirements, such as the need for all necessary attachments to be included in the record of trial. *See United States v. Rogers,* 22 U.S.C.M.A. 448, 47 C.M.R. 489, 1973 WL 14766 (1973); *United States v. Boxdale,* 22 U.S.C.M.A. 414, 47 C.M.R. 351, 1973 WL 14729 (1973); *United States v. Nelson,* 3

U.S.C.M.A. 482, 13 C.M.R. 38, 1953 WL 2388 (1953); *United States v. Whitman,* 3 U.S.C.M.A. 179, 11 C.M.R. 179, 1953 WL 2000 (1953). Thus, the plain language of Article 19, UCMJ, limits the power of a special court-martial only when a complete record of the in-court proceedings has not been preserved in such a way as to allow for a verbatim transcript of all proceedings. To the extent that R.C.M. 1107(d)(4)'s limitation on a convening authority's power to approve sentences is "based on" Article 19, UCMJ, its limitation must similarly be based only on the lack of a verbatim transcript.

The last authority cited in the original Analysis as a basis for R.C.M. 1107(d)(4) is the third sentence of paragraph 82b of the 1969 MCM. That paragraph described the contents of a general court-martial record of trial, and in the third sentence stated as follows: "It will set forth a **verbatim transcript,** except as provided below, of all proceedings had in open sessions of the court, all sessions held by the military judge, and hearings held out of the presence of the members." R.C.M. 1107(d)(4), MCM (1969)(emphasis supplied).

In sum, the original Analysis to R.C.M. 1107(d)(4) referenced two UCMJ Articles requiring "a complete record of the proceedings and testimony" and one clear MCM requirement for a verbatim transcript of all in-court proceedings. None of the three references expressly provided for limitation on the convening authority's power to approve sentences. Our review of these references confirms that R.C.M. 1107(d)(4) created a new rule, and strongly suggests that the newly stated limitation on the convening authority's power was intended to be premised only on the lack of a verbatim transcript. Thus both the Analysis and the Discussion support our view as to the intended application of R.C.M. 1107(d)(4).

---

5. That is, except for the obvious implication that if a bad-conduct discharge may not be adjudged, it is an unlawful sentence and therefore may not be approved. We are not unaware of the logical result that Article 19 has on a convening authority's power to approve sentences. We are merely observing that the language used in the Article evidences an intent only to require the recording of the proceedings before the sentence is announced, so that a verbatim record can be prepared, and thus the power to adjudge a discharge will be known to the court at the time of its deliberations.

### 3. Case Law

The case law lends some support to the appellant's argument, at least insofar as he contends that a convening authority may be barred from approving a bad-conduct discharge because of an omission in the record of trial. However, this rule of "completeness" from case law is based on Article 19, UCMJ, rather than on R.C.M. 1107(d)(4), and the rule requires that the omission must be substantial and cause prejudice to the appellant. Without at least a colorable showing of prejudice, the Court of Appeals for the Armed Forces (CAAF) has found that errors such as a failure to serve the SJAR on an appellant or trial defense counsel do not necessarily require relief at all, let alone setting aside an adjudged punitive discharge. The case law thus conflicts with the appellant's literal reading of R.C.M. 1107(d)(4) and supports our holding today.

Initially, we note that the CAAF has not addressed the application of R.C.M. 1107(d)(4) to cases involving an incomplete record of trial.[6] We are likewise unaware of any case in which our superior court has found that a lack of proof of service of the SJAR on an appellant or trial defense counsel requires that an adjudged discharge be set aside. However, the CAAF has articulated a "statutory requirement of completeness" based on Article 19, UCMJ, and set aside adjudged discharges for **substantial** omissions in the record of trial. *See, e.g., United States v. Stoffer*, 53 M.J. 26, 27 (C.A.A.F. 2000).

The "statutory requirement of completeness" that applies even in the absence of a defect in the verbatim transcript was first articulated in *United States v. McCullah*, 11 M.J. 234, 236 (C.M.A.1981). *McCullah* dealt with a missing evidentiary exhibit, rather than a defect in the verbatim transcript. Although all of the Court of Military Appeals cases cited in *McCullah* had interpreted Article 19's "complete record of the proceedings and testimony" language to refer to the requirement for a verbatim transcript, the

court cited an Army case, *United States v. Worley*, 44 C.M.R. 498, 1971 WL 12542 (A.C.M.R.1971) to support a new definition of "complete record," no longer strictly modified by the phrase "of the proceedings and testimony." *Worley* involved a missing evidentiary exhibit, and the Army court clearly stated that it viewed the problem as a violation of Article 54, UCMJ, and its requirements for a complete record of trial, rather than a problem in the verbatim transcript. Nevertheless, since *McCullah*, our superior court has construed Article 19, UCMJ, to require that an approved discharge be set aside if there is an omission in the record, whether or not the omission involves the verbatim transcript, but only if that defect constitutes a "substantial omission" raising a presumption of prejudice and the Government fails to rebut that presumption. *See Stoffer*, 53 M.J. at 27.

We respectfully submit that Article 19, UCMJ, is problematic as a statutory basis for the requirement of a complete record, for at least four reasons. First, Article 19's language clearly concerns a prerequisite for a special court-martial's power to **adjudge** a discharge, not a limitation on a convening authority's power to **approve** a discharge based on post-trial processing mistakes yet to be made at the time the punishment was adjudged. Second, in light of *McCullah*, Article 19, UCMJ, brings its inflexible remedy—mandatory disapproval of the bad-conduct discharge—into play whenever a missing document can be argued to have raised a presumption of prejudice, even though a verbatim transcript and a substantially complete record of trial may allow the appellate courts to confidently review every word that was spoken at trial and every important document relating to it. Third, Article 19, UCMJ, refers only to special courts-martial, yet the penalty for violating a statutory requirement of completeness logically should apply to ensure the quality of general courts-martial records as well as those of special courts-martial. Finally, the already significant windfall that Article 19, UCMJ,

---

6. However, the Court of Military Appeals denied the appellant's petition for review in *Mayville, supra,* wherein this court suggested that the drafters intended then-R.C.M. 1107(d)(3) to limit a convening authority's power to approve a discharge adjudged at a special court-martial only when there is no verbatim transcript of the proceedings.

has been interpreted to mandate for appellants so fortunate as to have suffered a mistake in the post-trial compilation or handling of their records of trial has recently increased. For special courts-martial after the effective date of the 2002 Amendments, all punishment in excess of 6 months will also have to be set aside, in addition to the discharge.

We suggest that this result is not required either by the statutory or regulatory scheme and that Article 54(c)(1), UCMJ, affords a more consistent and practical basis for requiring a complete record of trial. Article 54, UCMJ, deals broadly with records of trial for both general and special courts-martial, rather than focusing specifically on the jurisdiction of a special court-martial. It has no inflexible-penalty provision, and would allow courts to address minor omissions without having to resort to setting aside a discharge—and under the 2002 Amendments, all punishment in excess of 6 months duration—as the only remedy. Arguably, it is also more consistent with the current case law, which requires a showing of possible prejudice before many possible post-trial errors become a basis for relief.

Despite these concerns, we view the case law interpreting Article 19, UCMJ's "statutory requirement of completeness" to be consistent with our holding as to the effect and meaning of R.C.M. 1107(d)(4). The court in *McCullah* determined that the failure to attach required documents raises a presumption of prejudice, which the Government may rebut. *McCullah,* 11 M.J. at 237. This ruling contradicts by implication the appellant's argument that a bad-conduct discharge may not be approved whenever there is any deviation from the administrative requirements of R.C.M. 1103 for compiling a record of trial.

The CAAF's decisions involving the specific failure to serve the SJAR on defense counsel also support our ruling on the effect of R.C.M. 1107(d)(4) on this case. In other cases involving the alleged failure to serve the SJAR on defense counsel, our superior court has held that an appellant who is represented by counsel, in order to be entitled to relief, must demonstrate prejudice by stating what, if anything, she would have submitted in response to the SJAR. *United States v. Howard,* 47 M.J. 104, 107 (C.A.A.F.1997); *United States v. Chatman,* 46 M.J. 321, 323 (C.A.A.F.1997). While "assessments of prejudice during the clemency process are inherently speculative," and CAAF and the courts of criminal appeals "will not speculate as to what the convening authority would have done," the appellant must still make "a colorable showing that he was denied the opportunity to put before the convening authority matters that could have altered the outcome[.]" *United States v. Lowe,* 58 M.J. 261, 263–264 (C.A.A.F.2003).

The failure to attach proof of service of the SJAR on the defense counsel is clearly encompassed in the court's rulings. *Howard* and *Lowe* concerned an alleged failure to even serve the SJAR, and *Chatman* an addendum SJAR, respectively, on defense counsel, and not merely a failure to attach proof of that service to the record. Since, in these cases, the CAAF found that the appellants were not entitled to relief based on the lack of SJAR service, our holding that R.C.M. 1107(d)(4) does not require that the bad-conduct discharge be set aside because of a lack of **proof** of such service is not inconsistent with controlling precedent.

■ Finally, as noted above, this court has more specifically addressed R.C.M. 1107(d)(4)'s "vexatious interplay" [7] with R.C.M. 1103 and found that 1107(d)(4) does not require the disapproval of the discharge unless a verbatim record is lacking. *See Testori,* 35 M.J. at 745. The case law is therefore consistent with our holding today that R.C.M. 1107(d)(4) prohibits the convening authority from approving the bad-conduct discharge at general or special courts-martial **only** if there is no verbatim transcript of the testimony and proceedings.

To remedy this long-standing "vexatious interplay" within the Rules for Courts Martial, we recommend that the Judge Advocate General consider proposing a modification to R.C.M. 1107(d)(4) to more clearly restate the rule contained in R.C.M. 1103(f), and as explained in this opinion.

7. *United States v. Grogg,* N.M.C.M. 902675 (N.M.C.M.R. 13 June 1991)(unpublished op.)

### Conclusion

 We note no substantial omissions in the verbatim transcript in this case, and none are alleged. In view of our holding as to the intent of R.C.M. 1107(d)(4), this Rule does not prevent us from affirming the bad-conduct discharge in this case.

As previously noted, the Government has been unable to comply with this court's order to produce documentation establishing proof of service of the SJAR on the trial defense counsel. Even assuming that trial defense counsel was not served with the SJAR, we will not remand unless the appellant makes a colorable showing of possible prejudice by showing what, if anything, he would have submitted in response to the SJAR. *Lowe,* 58 M.J. at 264; *Howard,* 47 M.J. at 107; *Chatman,* 46 M.J. at 323. He has failed to do so. We therefore find this assignment of error to be without merit.

In view of the foregoing, we affirm the findings and sentence, as approved on review below.

Senior Judge CARVER and Senior Judge FINNIE * concur.

---

* Senior Judge FINNIE participated in this case prior to detaching on 30 June 2003.