UNITED STATES, Appellee

v.

Robert H. CHATMAN, Master Sergeant
U.S. Air Force, Appellant.

No. 96–0306.
Crim.App. No. 31046.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 4, 1997.

Decided Aug. 18, 1997.

For Appellant: *Major Robin S. Wink* (argued); *Colonel David W. Madsen* (on brief); *Colonel Jay L. Cohen, Lieutenant Colonel Kim L. Sheffield,* and *Captain Richard D. Desmond.*

For Appellee: *Major Allen G. Erickson* (argued); *Colonel Theodore J. Fink* (on brief); *Colonel Jeffery T. Infelise.*

## Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, pursuant to his pleas, of failure to go to his appointed place of duty, negligent dereliction of duty, and wrongfully using cocaine, in violation of Articles 86, 92, and 112a, Uniform Code of Military Justice, 10 USC §§ 886, 892, and 912a, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement and partial forfeitures for 18 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

Our Court granted review of the following issue:

> WHETHER THE STAFF JUDGE ADVOCATE ERRED, IN VIOLATION OF RCM 1106(f)(7) AND TO THE PREJUDICE OF APPELLANT, BY INCLUDING NEW MATTER IN THE ADDENDUM TO THE STAFF JUDGE ADVOCATE'S RECOMMENDATION AND THEN FAILING TO SERVE APPELLANT WITH SAID NEW MATTER SO THAT APPELLANT WAS DEPRIVED OF THE OPPORTUNITY TO RESPOND.

The allegation of wrongful use of cocaine was based on two urinalysis tests, the first a random urinalysis on June 16, 1993, and the second a command-directed urinalysis on July 13, 1993. The use of cocaine originally was alleged to have occurred "on divers occasions between on or about 16 May 1993 and on or about 13 July 1993."

The facts surrounding both urinalysis tests were investigated under Article 32, UCMJ, 10 USC § 832, and the investigating officer recommended that the Charge and its specification as originally drafted be referred to a general court-martial. The acting staff judge advocate (SJA) concluded that there was insufficient probable cause for the command-directed urinalysis on July 13, and he advised that the specification be amended to delete the words "on divers occasions" and to amend the date of "13 July 1993" to read "16 June 1993." The convening authority followed his SJA's advice and referred the amended specification to a general court-martial. Appellant pleaded guilty to a single use of cocaine under this specification.

After trial, appellant submitted a clemency petition in which he attacked his defense counsel as ineffective and asserted that his sentence was "too harsh" because he "did not really get to explain the circumstances that lead [sic] up to this event" (his use of cocaine).

The SJA responded in an addendum to his post-trial recommendation by saying that, in his opinion, defense counsel made a tactical decision not to explain the facts in more detail because "[t]here was, after all, the matter of the originally charged, but not referred, second positive urinalysis for cocaine which was potentially available for rebuttal, depending upon what the accused had to say." The SJA did not serve the addendum on appellant or his defense counsel for comment.

Appellant argues that the reference to the second urinalysis was "new matter" because it was "matter from outside the record" and because it introduced "issues not previously discussed." Final Brief at 3. The Government argues that the reference to the second urinalysis was not "new matter" because it was "discussed in the Article 32 Report" of Investigation "and the SJA's pretrial advice to the convening authority." Answer to Final Brief at 4. The Government further argues that, even if the addendum introduced new matter, appellant was not prejudiced because the convening authority already was aware of the second urinalysis, having adopted the SJA's pretrial advice to amend the specification because of doubtful probable cause to support the second urinalysis. Answer at 5.

The Court of Criminal Appeals held that the second urinalysis was not new matter because it appears in the Article 32 investigation and pretrial advice, both of which are

"between the 'blue covers' of the record of trial." Unpub. op. at 2.

■ RCM 1106(f)(7), Manual for Courts-Martial, United States (1994 ed.), authorizes an SJA to supplement the post-trial recommendation after receiving the comments of defense counsel, but the rule requires: "When new matter is introduced ... counsel for the accused must be served with the new matter and given a further opportunity to comment." The term "new matter" includes "matter from outside the record of trial and issues not previously discussed." RCM 1106(f)(7), Discussion; *see United States v. Leal,* 44 MJ 235, 236 (1996). The question whether an SJA's comments constitute new matter is a question of law that we review *de novo. See United States v. Sullivan,* 42 MJ 360, 363 (1995).

■ This Court has rejected the lower court's approach that anything "between the 'blue covers'" of the record of trial is not "new matter." *See Leal,* 44 MJ at 236. The reference to appellant's second positive urinalysis appeared in the Article 32 Report of Investigation and the SJA's pretrial advice to the convening authority. Those two documents are not part of "the record" but are matters required to be attached to the record. *Compare* RCM 1103(b)(2), Manual, *supra* (1995 ed.) (contents of record), *with* RCM 1103(b)(3) (matters to be attached to the record).

We hold that the reference to appellant's second positive urinalysis was new matter. It was "matter from outside the record of trial," and it injected "issues not previously discussed." It characterized appellant as a multiple offender rather than a one-time user of cocaine.

■ In the past we have treated new matter as "presumptively prejudicial." We have also held, however, that new matter in some cases was harmless error because it was neutral information or was "so trivial" as to be nonprejudicial. In such a case we have held that the presumption of prejudice was rebutted by the appellate record before us. *See United States v. Jones,* 44 MJ 242, 244 (1996).

In this case the convening authority who approved appellant's sentence was aware of the second positive urinalysis, because he had approved the SJA's advice to modify the specification and referred it as modified to a general court-martial. What we cannot determine is what, if anything, appellant would have submitted if the addendum had been served. In the past our position has been that, when an appellant has been "deprived of an opportunity to deny, counter, or explain" the new matter, "[w]e will not speculate on what the convening authority would have done if he had been presented with an accurate record." *Leal,* 44 MJ at 237.

The "new matter" in this case was neither neutral nor trivial. While we can imagine several possible responses appellant might have made to the new matter, we will not speculate. To be consistent with our precedents, we must set aside the lower court's decision and return this record for a new post-trial recommendation and convening authority's action.

However, this holding does not end the matter. We are concerned with the large number of cases coming before us involving issues of new matter in post-trial addenda. The court below has noted that post-trial errors have accounted for 44% of the cases where they have granted relief as of October 1995. *See United States v. Thompson,* 43 MJ 703, 707 (A.F.Ct.Crim.App.1995). We are no longer confident that returning cases for a new recommendation and action is a productive judicial exercise in the absence of some indication that the information presented to the convening authority on remand will be significantly different.

■ Accordingly, for all cases in which a petition for review is filed after the date of this decision asserting that defense counsel have not been served with an addendum containing new matter, we will require appellant to demonstrate prejudice by stating what, if anything, would have been submitted to "deny, counter, or explain" the new matter. *See* Art. 59(a), UCMJ, 10 USC § 859(a) (error must materially prejudice substantial rights of accused). We believe that the threshold should be low, and if an appellant

makes some colorable showing of possible prejudice, we will give that appellant the benefit of the doubt and "we will not speculate on what the convening authority might have done" if defense counsel had been given an opportunity to comment. *Jones, supra* at 244; *see United States v. DeGrocco,* 23 MJ 146, 148 (CMA 1987).

The decision of the United States Air Force Court of Criminal Appeals and the action of the convening authority are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to a convening authority for a new post-trial recommendation and action. Thereafter, Articles 66 and 67, UCMJ, 10 USC §§ 866 and 867 (1994), respectively, will apply.

Chief Judge COX and Judge EFFRON concur.

CRAWFORD, Judge (concurring in the result):

There are numerous errors that may take place during the post-trial process. Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a), makes no exceptions as to application of the harmless-error test. Insofar as the majority is willing to apply the harmless-error test in the future to cases involving those numerous post-trial errors, I agree. See my separate opinions in *United States v. Miller,* 45 MJ 149, 151 (1996); *United States v. Hickok,* 45 MJ 142, 146

(1996); *United States v. Jones,* 44 MJ 242, 244 (1996); *United States v. Leal,* 44 MJ 235, 237 (1996); *United States v. Hollon,* 39 MJ 38 (CMA 1993); *United States v. Demerse,* 37 MJ 488, 493 (CMA 1993).

SULLIVAN, Judge (concurring in part and dissenting in part):

I disagree with the prospective "judicial rulemaking" of the majority. The measure of justice in a particular case is not dependent on the number of cases where similar claims have been raised. The majority's sudden reversal of its decisions in *United States v. Jones,* 44 MJ 242, 244 (1996), and *United States v. Leal,* 44 MJ 235, 237 (1996), on judicial-policy grounds condones the inherently prejudicial conduct those decisions were designed to discourage.

In addition, I am disturbed by the majority's judicial rulemaking (the clone of "judicial legislation"). The law of America is strong because it is based on the steady progress of the common law. The stability of our "case-by-case" system which interprets and builds law for the armed services is upset when judges become "concerned with the large number of cases coming before us" (46 MJ at 323) in a particular area and determine a prospective rule for all future cases in that area. Allowing the law to develop on a case-by-case progression is better than a lightning bolt of judicial activism.