UNITED STATES, Appellee

v.

Andre E. K. LOWE, Airman
U.S. Navy, Appellant

No. 02-0493

Crim. App. No. 200000956

United States Court of Appeals for the Armed Forces

Argued March 11, 2003

Decided June 5, 2003

BAKER, J., delivered the opinion of the Court, in which GIERKE, EFFRON, and ERDMANN, JJ., joined.  CRAWFORD, C.J., filed a separate dissenting opinion.


Counsel

For Appellant: Major Anthony C. Williams, USMC (argued); Major Eric P. Gifford, USMC (on brief).

For Appellee: Lieutenant Lars C. Johnson, JAGC, USNR (argued); Colonel Rose M. Favors, USMC (on brief).


Military Judge: D. M. White


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

In accordance with his pleas, Appellant was convicted by a military judge of unauthorized absence and missing movement in violation of Articles 86 and 87, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 886 and 887 (2000), respectively. The adjudged and approved sentence included confinement for 90 days, forfeiture of $650 pay per month for three months, and a bad-conduct discharge. After Appellant's case was docketed with the Navy-Marine Corps Court of Criminal Appeals, but before submission of any assignments of error, appellate defense counsel moved the court for relief from post-trial processing errors. Specifically, counsel asserted that the convening authority took action before the staff judge advocate's recommendation (SJAR) was properly served on trial defense counsel pursuant to Rule for Courts-Martial 1106(f) [hereinafter R.C.M.]. This motion was denied and the case was submitted for review without specific assignments of error. Shortly afterwards, the Court of Criminal Appeals affirmed the findings and sentence in a short-form opinion. United States v. Lowe, NMCM No. 200000956 (N-M. Ct. Crim. App. August 30, 2001). Thereafter, Appellant filed a motion for reconsideration of the lower court's decision.

In conjunction with this motion, Appellant moved to attach certain documentation regarding a gunshot wound he received

2

after his court-martial while awaiting discharge in the Transient Personnel Unit.  Appellant's motion to supplement the record with additional documentation was granted, but the motion for reconsideration was ultimately denied.  We granted review of the issue regarding the failure to serve the defense counsel with the SJAR.

Included with this documentation supporting the motion for reconsideration is a naval message with a date-time group of 211330Z Jan 00 entitled, "Violent Crime Report - Assault With a Deadly Weapon."  This report states, "Approx. 0200L, 21Jan00 victim was outside the Golden Grill Mongolian Barbecue (a local night club) . . . and an argument occurred.  The suspect pulled a gun and shot the victim in the right arm."[1]  An entry in Appellant's medical record states that he "will need very aggressive therapy to restore his motion . . . . His long-term prognosis is uncertain based on his healing and motion."  A letter from Appellant's mother to the Navy-Marine Corps Appellate Review Activity expressed concerns about her ability to provide for her son's medical care following discharge, and she requested additional information on "the differences [between] a Bad-Conduct Discharge and a Dishonorable Discharge, including benefits and rights."

---

[1] There is no indication in the appellate record of an investigation into the shooting, or that Appellant was charged with any misconduct occurring in conjunction with the shooting.

DISCUSSION

Before this Court, Appellant renews his request for a new post-trial review because his trial defense counsel was not served with the SJAR prior to the convening authority's action pursuant to R.C.M. 1106(f). As a result, Appellant argues, "the convening authority should have been apprised of the significant effect a bad-conduct discharge would have on Appellant's ability to receive medical care for an injury that occurred while he was on active duty."

The Government argues that Appellant, in effect, waived any objection to the Government's failure to comply with R.C.M. 1106(f). First, according to the Government, Appellant failed to submit information concerning his physical condition for the convening authority's consideration despite four and a half months to do so. Second, citing R.C.M. 1107(f)(2), the Government argues that Appellant could have submitted pertinent materials after the convening authority acted and then requested that the convening authority recall and modify his action. The Government further asserts that the record is devoid of any evidence suggesting Appellant would have submitted material concerning his physical condition to the convening authority. Thus, Appellant has not shown any prejudice.

The Government's first argument is without merit. Rule for Courts-Martial 1106(f)(1) states:

4

> Service of recommendation on defense counsel and accused. Before forwarding the recommendation and the record of trial to the convening authority for action under R.C.M. 1107, the staff judge advocate or legal officer shall cause a copy of the recommendation to be served on counsel for the accused.

The text is plain. The SJAR is required to be served on trial defense counsel before the convening authority takes action. This affords the accused an opportunity to communicate with the convening authority on the question of clemency and other post-trial matters at the same time the Government is heard. In this manner, the convening authority has the benefit of information received through the adversarial process before he or she acts. Moreover, Article 60, UCMJ, 10 U.S.C. § 860 (2000), provides the accused the right to submit matters for the convening authority's consideration "within 10 days after the accused has been given an authenticated record of trial and, if applicable, the recommendation of the staff judge advocate[.]"[2] Thus, the fact that Appellant may have had time prior to service of the recommendation is of little moment as long as the statute provided him a period of time, as a matter of right, to submit matters related to clemency after the recommendation was served upon him.

---

[2] This statutory provision is implemented in Rule for Courts-Martial 1105(c)(1).

In Appellant's case, the parties agree that the convening authority took action on Appellant's case before the SJAR was served on trial defense counsel. The SJAR is dated April 19. The convening authority's action is dated May 16. The convening authority's action indicates that a copy of the SJAR was served on trial defense counsel on April 28; however, trial defense counsel's signed acknowledgment of receipt of the SJAR is dated June 6, three weeks after the convening authority's action.

In United States v. Williams, 57 M.J. 1 (C.A.A.F. 2002), we again recognized that while a convening authority has broad discretion whether or not to grant clemency, R.C.M. 1106(f) gives the accused a right to be served with the SJAR in a timely manner. In the wake of Williams, the Government has not persuaded us that so long as an accused could have been heard before or after the convening authority acted, he waives objection to a violation of R.C.M. 1106(f) for having failed to do so. The opportunity to be heard before or after the convening authority considers his action on the case is simply not qualitatively the same as being heard at the time a convening authority takes action, anymore than the right to seek reconsideration of an appellate opinion is qualitatively the same as being heard on the initial appeal. "The essence of post-trial practice is basic fair play -- notice and an

6

opportunity to respond." <u>United States v. Leal</u>, 44 M.J. 235, 237 (C.A.A.F. 1996).

The Government having not complied with R.C.M. 1106(f), the outcome in Appellant's case hinges on whether Appellant has made a colorable showing of possible prejudice.

In <u>United States v. Chatman</u>, 46 M.J. 321 (C.A.A.F. 1997), a case involving new matter contained in the SJA's addendum without notice to defense counsel, we required an appellant to not only demonstrate a lack of prior notice, but also to "demonstrate prejudice by stating what, if anything, would have been submitted to deny, counter, or explain the new matter." <u>Id.</u> at 323 (internal quotations omitted). In light of the discretionary nature of post-trial review, we further indicated that "the threshold should be low, and if an appellant makes <u>some colorable showing</u> of possible prejudice, we will give that appellant the benefit of the doubt and we will not speculate on what the convening authority might have done if defense counsel had been given an opportunity to comment." <u>Id.</u> at 323-24 (emphasis added)(internal quotations omitted). In <u>United States v. Howard</u>, 47 M.J. 104, 107 (C.A.A.F. 1997), we extended this standard to cases involving the failure to serve the SJAR on defense counsel.

We believe Appellant has met this burden. The Court of Criminal Appeals admitted into the appellate record

documentation regarding Appellant's gunshot wound. It is clear from these documents that Appellant would have sought the opportunity to inform the convening authority of his injury.

We reject the Government's contention at oral argument that Appellant's presence and subsequent injury at a bar at 1:00 a.m. alone militate a conclusion that the convening authority would not have considered clemency. By definition, assessments of prejudice during the clemency process are inherently speculative. Prejudice, in a case involving clemency, can only address possibilities in the context of an inherently discretionary act. Therefore, the question for this Court and the Court of Criminal Appeals is not whether we, individually or collectively, would have granted clemency to Appellant, but whether Appellant had a fair opportunity to be heard on clemency before a convening authority, vested with discretion, acting in his case. Where an appellant makes a colorable showing that he was denied the opportunity to put before the convening authority matters that could have altered the outcome, this Court and the courts of criminal appeals will not speculate as to what the convening authority would have done. United States v. Anderson, 53 M.J. 374, 378 (C.A.A.F. 2000).

Finally, the Government is, of course, correct that R.C.M. 1107(f)(2) allows the convening authority to recall and modify his action prior to forwarding the record for

review pursuant to Article 66, UCMJ, 10 U.S.C. § 866 (2000).  However, as we reminded in Williams, this is a rule that permits the Government as well as an accused to seek modification of an action.  Where there is a failure to comply with R.C.M. 1106(f), a more expeditious course would be to recall and modify the action rather than resort to three years of appellate litigation.  The former would appear to be more in keeping with principles of judicial economy and military economy of force.  Again, we reiterate the view espoused in United States v. Hill, 3 M.J. 295, 296 (C.M.A. 1977), that the purpose of the service requirement imposed in United States v. Goode, 1 M.J. 3 (C.M.A. 1975), and now embodied in R.C.M. 1106(f)(1), was "to eliminate delays encountered in claims of error in post-trial reviews and the exhaustion of appellate resources when such error could easily and expeditiously be resolved prior to the convening and supervisory authorities' actions."

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals and the action of the convening authority are set aside.  The record of trial is returned to the Judge Advocate General of the Navy for remand to a convening authority for a new post-trial recommendation and action.  Thereafter,

Article 66 and Article 67, UCMJ, 10 U.S.C. § 867 (2000), respectively, will apply.

United States v. Lowe, No. 02-0493/NA

CRAWFORD, Chief Judge (dissenting):

I, too, am troubled by sloppy post-trial practice that this Court has seen all too frequently. In United States v. Johnson-Saunders, 48 M.J. 74, 76 (C.A.A.F. 1999), I noted a number of options available to prevent sloppy practice.

> First, the Clerks of the Courts of Criminal Appeals could return records of trial to convening authorities if post-trial errors are noted. Second, the Courts of Criminal Appeals could take corrective action when necessary. Most importantly, the Judge Advocate General (or equivalent), or his or her designee, could track these errors and note who was serving as [the Staff Judge Advocate (SJA)] when the error occurred. This information then could be disseminated to the SJA or other appropriate individuals, including those who rate the SJA. Where a particular jurisdiction has too many errors, appropriate remedial action could be taken. This approach may be the most effective way to prevent continued errors in the post-trial phase. By the time a case reaches this Court, both the SJA and the convening authority have usually moved on to different assignments.

Despite my concerns, when a case such as this is resolved in the manner chosen by the majority, I have to ask what is left of Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a) (2000)? Article 59(a) states:

> A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.

(Emphasis added.) We have held that an appellant must make a colorable showing of possible prejudice under Article 59(a).

United States v. Chatman, 46 M.J. 321, 324 (C.A.A.F. 1997). However, that does not mean a colorable showing in a vacuum. On the contrary, it means a colorable showing of Article 59(a) prejudice. More is required than merely raising any matter affecting Appellant that was unknown to the convening authority at the time of the review and action.

Although we have said that we as a Court will not speculate as to what a convening authority may do with new information, our role is not to sit as "potted plants" either. In determining whether Appellant has met his burden of demonstrating a colorable showing of prejudice under Article 59(a), we should conduct a reasoned analysis based upon our experience and independent judgment. By not doing so, I fear that we have eviscerated Article 59(a) and effectively established a rote, per se reversal rule anytime an appellant raises any matter that he or she might have brought to the convening authority's attention post-trial. Thus, the result reached by the majority raises for me two troubling questions: First, do we as judges have any role in exercising our discretion to analyze and assess Article 59(a) prejudice based upon our experience and independent judgment? If not, does Article 59(a) mean anything anymore in the post-trial area?

In exercising my experience and independent judgment to interpret Article 59(a), I conclude that the facts of this case

2

clearly demonstrate Appellant did not suffer prejudice under Article 59(a) by the post-trial error. Appellant was anything but a stellar sailor. He missed movements on March 1, 4, 9, and 16, 1999. He subsequently pleaded guilty to absence without leave (AWOL) from February 23 to October 19, 1999, with the absence terminated by a surrender rather than an apprehension. The convening authority agreed to change the initial charge of AWOL terminated by an apprehension to AWOL truncated by suspension, consistent with Appellant's pleas. Appellant also had a summary court-martial conviction on June 4, 1998, for AWOL between April 9-May 4, 1998; missing movement on April 13, 1998; AWOL between May 14-15, 1998; and AWOL between May 18-20, 1998.

At this time, the remedy Appellant seeks is a new convening authority review and action, undoubtedly hoping to set aside the punitive discharge. But in addition to Appellant's poor disciplinary record, his own actions indicate he does not want to remain in the service. Therefore, I conclude that he has failed in his burden to demonstrate that he was prejudiced under Article 59(a) by the SJA's error in this case.

This is certainly not the first time that, contrary to the majority and after exercising my independent judgment and analysis, I have concluded that an appellant has failed to meet his burden of demonstrating a colorable showing of prejudice under Article 59(a) and that, therefore, no reasonable convening

3

United States v. Lowe, No. 02-0493/NA

authority would set aside the punitive discharge. Numerous cases like this have been returned for a new review and action by a majority of the Court over the years and no favorable convening authority actions have been taken. See, e.g., United States v. Johnston, 51 M.J. 227, 230 (C.A.A.F. 1999)(Crawford, J., dissenting); United States v. Carnley, 46 M.J. 401, 401-02 (C.A.A.F. 1997)(summary disposition); United States v. Catalani, 46 M.J. 325, 330 (C.A.A.F. 1997)(Crawford, J., dissenting); United States v. Parks, 46 M.J. 114 (C.A.A.F. 1996)(summary disposition); United States v. Edwards, 45 M.J. 114, 117 (C.A.A.F. 1996)(Crawford, J., dissenting); United States v. Tise, 43 M.J. 446, 446-47 (C.A.A.F. 1995)(summary disposition); United States v. Dresen, 43 M.J. 372 (C.A.A.F. 1995)(summary disposition); United States v. Dickey, 43 M.J. 170, 170-71 (C.A.A.F. 1995)(summary disposition); United States v. Williams, 43 M.J. 149 (C.A.A.F. 1995)(summary disposition).