UNITED STATES

v.

Konah K. BLACKETT II, Lance Corporal
(E–3), U.S. Marine Corps.

NMCCA 200301153.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 27 Nov. 2001.

Decided 10 Jan. 2006.

Capt Rolando Sanchez, USMC, Appellate Defense Counsel.

Capt Glen Hines, USMC, Appellate Government Counsel.

Before RITTER, Senior Judge, SCOVEL, Senior Judge, and HARTY, Appellate Military Judge.

HARTY, Judge:

A special court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of failure to go to his appointed place of duty and assault consummated by a battery, in violation of Articles 86 and 91, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 891. A different panel of officer and enlisted members sentenced the appellant to 2 months confinement, reduction to pay grade E–1, forfeiture of $521.00 pay per month for 2 months, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed. In an act of clemency, the CA deferred and subsequently suspended all confinement in excess of 37

days for 12 months from the date of his action.

This court has carefully examined the entire record of trial, the appellant's 6 assignments of error, the appellant's motion to attach documents, the Government's answer, and the appellant's reply. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Speedy Trial

The appellant asserts as his first assignment of error that he was denied his right to a speedy trial in violation of RULE FOR COURTS-MARTIAL 707, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). Specifically, the appellant asserts that R.C.M. 707 applies to mistrials granted after findings but before sentencing. The appellant asks this court to dismiss the charges referred for sentencing. Appellant's Brief of 28 May 2004 at 3–5. The Government concedes that R.C.M. 707 applies, but argues that the appellant is not entitled to relief because the Government moved with "reasonable diligence" in bringing the appellant to sentencing. Government's Answer of 14 Dec 2004 at 3–4. The Government does not address and, therefore, does not dispute the fact that it took the Government more than 120 days from the date of mistrial to bring the appellant before the court for sentencing. Under the facts of this case, however, we do not find a speedy trial violation that entitles the appellant to any remedy.

On 22 March 2001, members found the appellant guilty at a special court-martial. During a post-findings recess and immediately outside the courtroom, the appellant physically assaulted a corporal who had testified against him on the merits. Several members heard the commotion and went to the area to see what had happened. They saw the corporal bleeding from the head and believed that he had been attacked by the appellant. These members then informed the remaining members that the appellant had attacked the corporal. Record, Volume II at 266–78.[1]

---

1. The findings and sentencing portions of the trial are in separate volumes, with the transcript

On 23 March 2001, the Government and the appellant both moved, pursuant to R.C.M. 915, for a mistrial as to sentencing alone. The military judge granted the joint request and declared a mistrial as to sentencing only. Record, Volume II at 296. The military judge recommended that the CA rerefer the charges to a court-martial panel of members from a different command for sentencing. *Id.* at 299. The first post-mistrial Article 39(a), UCMJ, session was held on 18 October 2001. The appellant's motion to dismiss for denial of his Sixth Amendment, U.S. CONST. amend. VI, and R.C.M. 707 speedy trial rights was heard and denied on 6 November 2001. Record, Vol. I at 17–87, 93. The military judge issued written essential findings of fact and conclusions of law supporting his decision to deny the appellant's motion. Appellate Exhibit XI.

We must decide whether R.C.M. 707 applies to a mistrial declared as to sentence alone. This appears to be an issue of first impression. Neither the appellant nor the Government have provided citation to any case law directly on point and we find none. The specific issue is whether an accused is entitled to Sixth Amendment or R.C.M. 707 speedy trial protection after a mistrial has been declared as to sentencing only. Based on our superior court's analogous precedents, we answer that question in the affirmative.

R.C.M. 915(a) states, in part, that a mistrial may be declared "as to only the proceedings after findings." Our superior court has long held that "mistrials clearly can be declared only as to sentencing; charges and specifications already reduced to findings can readily be carried over without mystical impairment." *United States v. Mora,* 26 M.J. 122, 124 (C.M.A.1988), citing R.C.M. 915(a), and *Burtt v. Schick,* 23 M.J. 140, 142 (C.M.A. 1986). Once the mistrial is granted, the provisions of R.C.M. 707(b)(3)(A) apply and the Government must comply with the 120–day clock as described in *United States v. Becker,* 53 M.J. 229 (C.A.A.F.2000).

In *Becker,* our superior court remanded an appellant's case for a rehearing on sentence.

That hearing did not occur for 338 days after the date of remand and 316 days after the record had been transmitted to the CA. *Id.* at 231. The appellant in that case argued, and our superior court agreed, that the speedy trial rights granted in R.C.M. 707 applied to sentence rehearings. Acknowledging that R.C.M. 707(b)(3)(D) does not distinguish between rehearings on findings and sentence, the court stated:

> We conclude that the mechanics of RCM 707 can be applied to sentence-only rehearings in a manner that will protect a servicemember's rights under Articles 10 and 33[, UCMJ, 10 U.S.C. §§ 810 and 833] without applying the Burton–Flint–Cabatic 90–day presumption ... the procedures established under RCM 707 will be applied to sentence-only proceedings in accordance with the following principles. First, the 120–day clock will start on "the date that the responsible convening authority receives the record of trial and the opinion authorizing or directing a rehearing." See generally RCM 707(b)(3)(D). Second, the clock will stop when the accused is "brought to" the bar for resentencing—typically, at the first session under Article 39(a), UCMJ.... See generally RCM 707(a) and (b)(1). Third, if the Government has sufficient reason to justify a delay, such as an inability to locate an accused on appellate leave, "all [such] requests for ... delay, together with supporting reasons, will be submitted to the convening authority" prior to referral or, "after referral, ... to the military judge for resolution." See generally RCM 707(c)(1).

*Id.* at 232. We find the *Becker* case sufficiently analogous to the appellant's case to apply our superior court's analysis to this issue. Absent contrary guidance from our superior court, we find that R.C.M. 707(b)(3)(A) applies to mistrials granted "as to only the proceedings after findings." R.C.M. 915(a). Having found that R.C.M. 707 applies, we must determine if the time

starting at page 1 and the exhibits in each starting with the number 1, letter A, or Roman num-

eral I.

628

limits have been complied with and, if not, what remedy is appropriate.

The military judge received evidence and heard argument on the appellant's motion to dismiss. He adopted as fact the stipulated chronology submitted by the parties as AE VII, and issued detailed essential findings of fact and conclusions of law in denying the motion. AE XI. The military judge determined that if R.C.M. 707 applied,[2] the 120–day speedy trial clock began on 23 March 2001 when the mistrial was declared and ended on 18 October 2001 when the first Article 39(a), UCMJ, session was held on the re-referred charges—a total of 209 days. From this period, the military judge subtracted 71 days for the defense-requested R.C.M. 706 inquiry, leaving 138 days of delay attributable to the Government. *Id.* at 4–5. Applying the alternative remedy analysis from *Becker*, the military judge found that dismissal of the charges was not an appropriate remedy and denied relief. *Id.* at 5. The military judge also conducted a Sixth Amendment analysis applying the factors enumerated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and found that the length of delay enured to the appellant's benefit, and that there had been no speedy trial violation. AE XI at 6–7.

We review a military judge's denial of a speedy trial motion *de novo*, *United States v. Cooper*, 58 M.J. 54, 57 (C.A.A.F.2003), and afford the factual findings of the military judge substantial deference, *see United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F. 1999).

*1. R.C.M. 707 Considerations*

■ We agree with the military judge's decision to deny the motion. R.C.M. 707(b)(3)(A) states in pertinent part that: "If ... a mistrial is granted, a new 120–day time period under this rule shall begin on the date of the ... mistrial for cases in which there is no repreferral...." This rule does not differentiate between mistrials granted before findings and mistrials granted after findings. Here, the mistrial was granted after findings

2. The military judge initially found that R.C.M. 707 did not apply to a sentencing hearing after a

and the charges were not re-preferred. Therefore, the 120–day clock began on 23 March 2001, the date the mistrial was granted. The Government had 120 days to bring the appellant "before the bar" to toll the running of the R.C.M. 707 clock. Because the Government exceeded the time allowed by 18 days, we must determine the appropriate remedy.

■ In *Becker*, our superior court addressed the R.C.M. 707 remedy issue in the context of a rehearing on remand, stating:

[T]he remedy should be tailored to the harm suffered, such as an appropriate sentence credit or, in a case where the delay has interfered with the defense's ability to receive a fair hearing, a sentence to no punishment at all. The remedy set forth in RCM 707(d), dismissal of the charges with or without prejudice, which is appropriate in the usual case of a speedy-trial violation that occurs prior to the trial at which an accused's guilt is to be decided, is not appropriate in the case of an accused whose guilt already has been determined, and affirmed on appeal, and where the only remaining determination is the sentence.

53 M.J. at 232. We agree with the military judge that dismissal of charges is not an appropriate remedy when guilt has already been determined. We are mindful that the mistrial resulted from the appellant's own misconduct, he was not in any form of restraint, presumably he received his active duty pay and benefits, he never requested a speedy sentence hearing, and he has made no showing that the delay had any impact on his sentence hearing. In an attempt to tailor the remedy to the harm suffered, we find that there was no harm. Under these circumstances, as our superior court found in *Becker*, the appellant is not entitled to any relief under R.C.M. 707.

*2. 6th Amendment Considerations*

■ The test for determining violations of the Sixth Amendment right to speedy trial was set out in *Barker v. Wingo*. In that

post-findings mistrial was granted. AE VI at 4.

case, the Supreme Court identified the most serious type of prejudice implicated by a violation of the Sixth Amendment as the impairment of the accused's right to a fair trial, stating: "The inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. The *Barker* analysis includes four factors for consideration: (1) length of delay; (2) reasons for the delay; (3) the appellant's demand for speedy trial; and (4) prejudice to the appellant. *Id.* at 530, 92 S.Ct. 2182.

Analysis of the first *Barker* factor leads us to conclude that under the facts of this case there is no excuse for taking 209 days from date of mistrial to get the appellant to the bar for sentencing. As to the other factors, however, we find that the appellant requested and received an R.C.M. 706 inquiry, there was no demand for a speedy sentence hearing, and the appellant did not suffer any prejudice from the delay. Accordingly, the appellant was not deprived of his Sixth Amendment rights.

### Staff Judge Advocate's Recommendation Addendum

For his second assignment of error, the appellant alleges that new matters were raised in post-trial correspondence that had not been provided to the appellant for comment. The appellant requests this court to set aside the sentence and order a new post-trial recommendation and CA's action. Appellant's Brief at 6. We decline to grant relief on this issue.

R.C.M. 1106(f)(7) only requires service of an addendum if it contains new matter. Although the new matter complained of here was contained in routine correspondence rather than in the staff judge advocate's recommendation (SJAR) addendum, the prejudicial impact can be the same. We will, therefore, determine *de novo* whether new matter has been submitted to the CA. *United States v. Key*, 57 M.J. 246, 248 (C.A.A.F. 2002) (citing *United States v. Chatman*, 46 M.J. 321, 323 (C.A.A.F.1997)). In *Chatman*,

the court held that, even if there was new matter in an *ex parte* addendum, the appellant must "demonstrate prejudice by stating what, if anything would have been submitted to 'deny, counter, or explain' the new matter." 46 M.J. at 323.

The threshold for demonstrating prejudice is low. "[I]f an appellant makes some colorable showing of possible prejudice, we will give that appellant the benefit of the doubt and we will not speculate on what the convening authority might have done if defense counsel had been given an opportunity to comment." *Id.* at 323–24 (internal quotation marks omitted); *United States v. Anderson*, 53 M.J. 374, 378 (C.A.A.F.2000); see also *United States v. Cornwell*, 49 M.J. 491, 493 (C.A.A.F.1998).

We find that the chief review officer's letter of 23 August 2002, does not contain new matter but does contain a statement concerning compliance with a pretrial agreement, although none existed in this case. Because we do not find any new matter within this transmittal letter, we will not presume the trial defense counsel would have commented on its content had he received the document prior to the CA taking his action. Certainly, we do not find anything prejudicial to the appellant in this document.

As to the CA's email of 28 August 2002 to his staff judge advocate (SJA) and the chief review officer, the appellant claims that "the trial delay discussion contained in [the CA's] email was certainly an issue not previously discussed in the SJAR, clemency matters or the addendum SJAR" and was, therefore, "new matter" and "an allegation of legal error that the SJA should have formally answered." Appellant's Brief at 7–8. The trial defense counsel (TDC) states that if he had received a copy of the email he would have commented as follows:

First, the alleged assault is factually incorrect as it did not occur "in front of the entire court." Second, the Convening Authority appears distraught over the chronology of the case and that the assault charge was withdrawn and dismissed due to "legal missteps." There is significant concern that the Convening Authority was

improperly considering (1) the Government's lack of diligence in completing the sentence portion of the trial, (2) the Government's actions in failing to address the alleged assault, and (3) the alleged assault itself, against the accused when addressing post-trial clemency. Third, the Convening Authority indicates that the Defense Counsel submitted his clemency request "11 days later than authorized."

TDC's Affidavit of 28 May 2004. We will address each concern.

First, whether the appellant's assault of a witness occurred in front of the entire court or the entire court otherwise learned of the assault is of no great distinction. It was the appellant's actions that caused the mistrial. This is not new matter. The record of trial clearly spells out these circumstances. Second, the CA does not "seem distraught over the chronology of this case." The CA expresses his disgust with how the appellant's case has been handled and correctly notes that "nothing regarding the legal handling of this case has been expeditious...." CA's email of 28 Aug 2002 at 1. Nothing prohibits the CA from considering a case chronology. That chronology is part of the record of trial. The tone of the CA's email indicates that, if anything, the chronology and "legal missteps" would be held against the Government. Third, the reference to the TDC's late submission of clemency matters was first raised in the SJAR addendum served on TDC on 7 August 2004. The TDC did not respond to that addendum, and therefore the appellant has waived the issue. Even if not waived, the CA granted clemency by deferring all confinement beyond 28 December 2001, as requested by the appellant. CA's letter of 17 Dec 2001. The CA considered the appellant's clemency request prior to taking his action and suspended the deferred portion of the confinement for a period of 12 months from the date of his action. CA's Action of 5 Sep 2002.

The challenged documents and content are directly attributable to the record of trial. As a result, the contested statements are not new matter. Even if the documents contain new matter, we find the appellant has not made a colorable showing of possible prejudice. This assignment of error has no merit.

## Post–Trial Processing Delay

For his sixth assignment of error, the appellant asserts that he was denied speedy post-trial review. The appellant avers that this court should exercise its power under Article 66, UCMJ, and disapprove the adjudged punitive discharge. Appellant's Brief at 16.

The following post-conviction chronology is instructive on the extent of the delay:

| Days Elapsed | Dates | Action |
|---|---|---|
| 0 | 22 March 2001 | Appellant found guilty |
| 250 | 27 November 2001 | Appellant sentenced |
| 369 | 26 March 2002 | Military Judge authenticated record |
| 371 | 28 March 2002 | Record served on TDC |
| 442 | 07 June 2002 | SJAR issued |
| 446 | 11 June 2002 | SJAR served on TDC |
| 487 | 22 July 2002 | TDC submitted clemency package |
| 502 | 06 August 2002 | SJAR addendum issued |
| 503 | 07 August 2002 | SJAR addendum served on TDC |
| 532 | 05 September 2002 | CA's action |
| 804 | 04 June 2003 | Record received at Navy-Marine Corps Court of Criminal Appeals |

In determining if post-trial delay violated the appellant's due process rights, we consider four factors: (1) the length of the delay, (2) the reasons for the delay, (3) the appellant's assertion of the right to a timely appeal, and (4) prejudice to the appellant. *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F.2005)(citing *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F.2004)). If the length of the delay itself is not unreasonable, there is no need for further inquiry. If, however, we conclude that the length of the delay is "facially unreasonable," we must balance the length of the delay with the other three factors. *Id.* Moreover, in extreme cases, the delay itself may " 'give rise to a strong presumption of evidentiary prejudice....' " *Id.* (quoting *Toohey*, 60 M.J. at 102).

The CA said it best—"nothing regarding the handling of this case has been expeditious...." CA's email of 28 Aug 2002. We share the CA's frustration on this issue. From the date of mistrial, 23 March 2001, this case has been poorly handled. There is no Government explanation for the 4-month

delay between sentencing and authenticating the sentencing portion of the record of trial consisting of 271 pages. Even after the CA expressed his displeasure with delay in this case it took 9 months to get the record of trial to this court. There is no Government explanation for the 9–month delay from the CA's action to this court's receipt of the record. We find that the unexplained delays, taken together, are facially unreasonable, triggering a due process review.

■ Since there is no explanation for the delays in the record, we look to the third and fourth *Jones* factors. The appellant did not assert his right to speedy post-trial review, nor has he suggested that he has been prejudiced by the delay. Our own review of the record does not reveal any evidence of prejudice to the appellant. We are baffled by the unexplained delays in this case, however we conclude that based on an Article 59(a), UCMJ, analysis there has been no due process violation resulting from the post-trial delay.

We are cognizant of this court's power under Article 66(c), UCMJ, to grant sentence relief for excessive post-trial delay even in the absence of actual prejudice. *United States v. Oestmann*, 61 M.J. 103, 104 (C.A.A.F.2005); *Toohey*, 60 M.J. at 102; *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37 (C.A.A.F.2003); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F.2002). We are challenged under Article 66, UCMJ, to affirm only the findings and the sentence or part of the sentence that we find correct in law and fact and that we determine, on the basis of the entire record, should be approved.

We apply the factors recently enumerated by this court in *United States v. Brown*, 62 M.J. 602 (N.M.Ct.Crim.App.2005)(en banc). As we stated above, the delay of over 26 months from the date of trial to the docketing with this court is, on its face, unreasonable, even for this 578–page record of trial. The Government does not advance cogent reasons for the delay, however, we note the delay of 250 days from the date the appellant was found guilty until he was sentenced re-

sulted in part from his own misconduct, and that the TDC requested a 20–day extension to file the appellant's post-trial material. TDC letter of 13 Jun 2002. The record of trial is of moderate length and contains an issue of first impression. The appellant advances no evidence of bad faith or gross negligence on the part of the Government. The appellant did not assert his right to a speedy review until the filing of his brief and assignment of error with this court. The appellant presents no harm suffered as a result of the delay.

Finally, the appellant was convicted of failure to go to his appointed place of duty and assault consummated by a battery on a fellow Marine. The appellant had two prior nonjudicial punishments. In an act of clemency, the CA deferred and subsequently suspended all confinement in excess of 37 days. Under the circumstances, the appellant received clemency from an already lenient sentence at trial.

### Conclusion

The remaining assignments of error [3] are denied. We affirm the findings of guilty and sentence, as approved by the convening authority.

Senior Judge RITTER and Senior Judge SCOVEL concur.

---

3. The appellant raised three other assignments of error regarding sentence appropriateness, factual sufficiency to prove guilt of failure to go to his appointed place of duty, and denial of a challenge for cause.