# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40132 (f rev)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Christian D. PAYAN**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 21 October 2022

————————————

*Military Judge*: Rebecca E. Schmidt, Christina M. Jimenez; Dayle P. Percle (remand).

*Sentence*: Sentence adjudged on 18 May 2021 by GCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 7 July 2021: Dishonorable discharge, confinement for 16 months, total forfeiture of pay and allowances, and reduction to E-1.

*For Appellant*: Major Kasey W. Hawkins, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Major Joshua M. Austin, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before POSCH, CADOTTE, and GOODWIN, *Appellate Military Judges*.

Judge GOODWIN delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

GOODWIN, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of one charge and one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 16 months, total forfeiture of pay and allowances, and reduction to the grade of E-1.

Appellant's record of trial is before the court for a second time. On 28 April 2022, by order of the court, we returned the record to the Chief Trial Judge, Air Force Trial Judiciary, for correction under Rule for Courts-Martial (R.C.M.) 1112(d). *See United States v. Payan,* No. ACM 40132, 2022 CCA LEXIS 242 (A.F. Ct. Crim. App. 28 Apr. 2022) (order). Upon return of the record to the court, and on further review, Appellant raises two related assignments of error: (1) whether he was served a copy of the victim's post-trial submission to the convening authority and received the opportunity to rebut the submission; and (2) whether trial defense counsel was ineffective by failing to inform him of the victim's submission and his opportunity to respond to the submission.

Although trial defense counsel's recollection of the events in question contradicts Appellant's account, that recollection together with Appellant's signed receipt of the victim matters at issue "compellingly demonstrates" the improbability of Appellant's claims. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). As such, we find no cause to order an evidentiary hearing. *Id.* at 244–45. We further find no error materially prejudiced Appellant's substantial rights and we therefore affirm the findings and sentence.

## I. BACKGROUND

Appellant befriended XM while at basic military training, and they remained friends through technical training. After technical training, Appellant and XM were both stationed at Nellis Air Force Base, Nevada. XM's wife, IGT, lived with XM in Las Vegas, near the base.

On 31 March 2019, Appellant, XM, and IGT had dinner, and then drove to XM's and IGT's home. There, they shared a bottle of liquor, each having several shots. Later, XM and IGT went to their bedroom, while Appellant stayed in the living room. XM and IGT fell asleep on their bed; IGT was not wearing any

---

[1] Unless otherwise specified, all references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.). *See* Exec. Order 13,825, §§ 3 and 5, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018).

clothes or underwear and not covered by any bedding. At some point, XM rolled off the bed and continued sleeping on the floor.

Later, Appellant decided he wanted someone to drive him to his on-base dormitory. While XM and IGT were sleeping, Appellant entered their bedroom intending to ask for a ride home. When he entered the bedroom, Appellant saw that XM and IGT were asleep. Appellant unsuccessfully tried to wake XM. Then, Appellant unsuccessfully tried to wake IGT. Having become sexually aroused by her state of undress, Appellant moved onto the bed with IGT and penetrated her vulva with two fingers for between five and ten seconds. While he was doing this, IGT began to stir and said, "No." Realizing that what he was doing was wrong, Appellant stopped, apologized, left the bedroom, and went downstairs.

IGT told Air Force Office of Special Investigations (AFOSI) agents that she woke up to the feeling of someone's body weight on top of her and something soft on her leg. IGT initially thought the body weight she felt was her husband's, until she saw XM on the floor. Realizing the body weight was not her husband's, IGT said, "No" and screamed XM's name to wake him. IGT believed the soft object she felt on her leg could have been a penis. IGT did not recall or report Appellant putting his fingers in her vulva. After IGT woke XM, they drove Appellant to his dorm room. Appellant texted an apology to XM the following day and asked him to apologize to IGT.

During his AFOSI interview, Appellant admitted penetrating IGT's vulva with his fingers while she was sleeping on the bed. He also admitted details of his offense that IGT and XM would otherwise not have known. During Appellant's court-martial, the military judge accepted his pleas and found him guilty of Charge I and its Specification. During post-trial processing, Appellant requested clemency from the convening authority, which the convening authority denied.

## II. DISCUSSION

### A. Victim's Post-trial Submission to the Convening Authority

Appellant first asserts that he is entitled to sentence relief because the Government failed to serve him with a copy of IGT's post-trial submission to the convening authority. This failure, he argues, prevented him from responding to IGT's statement prior to the convening authority's clemency denial. We are not persuaded that the Government failed to provide IGT's statement to Appellant. Furthermore, we find that Appellant was not prejudiced by the claimed error.

### 1. Additional Background

During sentencing, IGT's unsworn statement discussed the impact of "being a victim of a disgusting, embarrassing sexual assault committed by an Airman [who] was [her] husband's friend," including being "on guard all the time," and having nightmares and "night sweats." IGT further discussed how "[i]t is traumatic to think that someone who was [her] husband's friend would do something like [this] to [her]."

Appellant presented both a verbal and written unsworn statement. In his written unsworn statement, Appellant apologized to IGT and XM. He stated that he knew "nothing [he could] do or say w[ould] make what [IGT] experienced go away," and that he hoped that his guilty plea would bring IGT "some sort of closure or relief . . . and show[ ] that [he understood his] actions were entirely unacceptable." Appellant also discussed "life altering consequences, not only for [him]self, but for others such as [IGT]."

On 26 May 2021, IGT wrote a post-trial statement to the convening authority. This statement contained a single substantive paragraph which reads as follows:

> Thank you for considering my statement in your decision in this case. The actions of [Appellant] have destroyed what little trust I had left in the Air Force, its Airmen, and men in general. I respectfully request that you consider me and the long-term effects this situation will have on my life when making your decision on the sentence in this case. I believe that the sentence adjudged is just and appropriate[,] and I respectfully request that you uphold the sentence as adjudged.

After considering all matters submitted, including IGT's statement, the convening authority denied Appellant's clemency request.

After his case was docketed with this court, Appellant moved to attach his declaration. After receiving Appellant's assignments of error brief and declaration, the Government requested permission to attach trial defense counsel's declaration that included attachments. We granted both Appellant's and Government's motions to attach under *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020).

Appellant states in his declaration that he "was not served with the victim's post-trial submission of matters until [he] received the complete record of trial." Appellant further states that trial defense counsel never provided him with IGT's post-trial statement and did not discuss with him his right to respond to the submission. Appellant claims that "if [he] had received the victim's post-trial matters, or if [his] defense counsel had discussed them with [him], [he] would have wanted to respond to them."

Trial defense counsel states in his declaration that, on 4 June 2021, he received an email from a government paralegal containing IGT's post-trial matters and notice of Appellant's right to rebut those matters. Trial defense counsel replied to this email informing the paralegal that the Government needed to serve Appellant directly, and that he would advise Appellant after the Government served his client.[2] Later the same day, trial defense counsel received another email from the paralegal that included Appellant's signed acknowledgment of receipt for the victim's matters and notification of his right of rebuttal.[3] On 8 June 2021, trial defense counsel spoke with Appellant about his ability to submit clemency matters.

**2. Law and Analysis**

R.C.M. 1106A(c)(3) requires that the Government have provided Appellant with any matters submitted by IGT. Whether the Government has properly completed post-trial processing is a question we review de novo. *See United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004). An appellant must make "some colorable showing of possible prejudice" to obtain relief for post-trial errors arguably affecting the convening authority's action. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)). To make a colorable showing of possible prejudice with respect to claims the Government failed to serve the defense with new matter for the convening authority, the appellant must state "what, if anything, would have been submitted to 'deny, counter, or explain' the new matter." *United States v. Chatman*, 46 M.J. 321, 323 (C.A.A.F. 1997) (citation omitted). "[T]he threshold should be low, and if an appellant makes some colorable showing of possible prejudice, we will give that appellant the benefit of the doubt and 'we will not speculate on what the convening authority might have done' if defense counsel had been given an opportunity to comment." *Id*. at 323–24 (quoting *United States v. Jones*, 44 M.J. 242, 244 (C.A.A.F. 1996)) (additional citation omitted).

Here, we have conflicting declarations. Importantly, trial defense counsel's declaration includes a copy of the notification of IGT's post-trial matters and Appellant's right of rebuttal that bears Appellant's signature. We find the record compellingly demonstrates the improbability of Appellant's claims on appeal. *Ginn*, 47 M.J. at 248. In that regard, Appellant acknowledged receipt of the victim's submission on the same day that it was dated, 4 June 2021, at 1113 hours. The notice informed Appellant that the victim had "submitted the

---

[2] The email between trial defense counsel and the case paralegal are attached to trial defense counsel's declaration.

[3] Appellant's signed acknowledgment is attached to trial defense counsel's declaration.

attached matters to the convening authority," and that Appellant "may submit matters in response or rebuttal." Appellant was on notice that his "response must be limited to the matters raised in the attached" and that any "submissions should be provided to the Staff Judge Advocate" within "5 calendar days from the date [he] receive[d] this notification memo." Appellant was informed, also, that "[f]ailure to submit a response by this date will constitute waiver." On 17 June 2021, the convening authority signed a Decision on Action memorandum stating, "Prior to coming to this decision, I consulted with my Staff Judge Advocate. Before declining to take action, I considered matters timely submitted by the accused under R.C.M. 1106 and the victim under R.C.M. 1106A."

Despite Appellant's signed acknowledgement of receipt of IGT's post-trial matters, Appellant asserts, "If [he] had received the victim's post-trial matters, or if [his] defense counsel had discussed them with [him], [he] would have wanted to respond to them." In the court's view, Appellant's claim that he did not discuss IGT's rebuttal with trial defense counsel suffers from the same infirmity as his claim that he never received IDT's rebuttal in the first instance. As such, both claims are intertwined and compellingly contradicted by trial defense counsel's production of Appellant's signed acknowledgment of receipt. Under the circumstances, we are convinced Appellant was served a copy of the victim's post-trial submission to the convening authority. We are also convinced Appellant was made aware of his right to rebut the submission and was given that opportunity. We are likewise convinced that with the victim rebuttal in hand, Appellant had an opportunity to discuss that rebuttal with trial defense counsel and made an affirmative decision not to provide anything more to the convening authority than was already submitted. Accordingly, we find no reason to order an evidentiary hearing. *Id.* at 244–45. Appellant declined to submit a response to the victim's post-trial matters after receiving notice and an opportunity to be heard.

Notwithstanding, we conclude that even if Appellant had not been served with the victim's submission, he presents no colorable showing of possible prejudice. Despite its brevity, Appellant believes IGT's post-trial statement contains new matters not presented previously. Specifically, Appellant alleges that the new matters are the single statement that Appellant's "actions destroyed what little trust [IGT] had left in the Air Force, Airmen, and men." Although IGT did not use these exact words in her written unsworn statement during the court-martial, we do not find this statement materially different from the feelings of disgust, embarrassment, and trauma IGT described in her unsworn statement.

Furthermore, Appellant states he would have rebutted this statement by pointing out that IGT did not know his name and could not describe him well

when she reported the offense. While such a statement may be relevant in a contested sexual assault case where identity of the offender is at issue, it does not rebut IGT's victim impact statement.

Appellant would also rebut IGT's statement by telling "the convening authority that [he] took responsibility for [his] crime immediately," apologized to IGT and XM the same evening as the offense, and "pleaded guilty to try and make things right[,] and to try to restore [IGT's] trust in the Air Force[,] and [to] show that [he] know[s] how to do the right thing." Between the stipulation of fact and Appellant's verbal and written unsworn statements, evidence exists of Appellant's immediate acceptance of responsibility, remorse, prompt apologies to IGT and XM, and his hope that IGT would know that he understood his actions were unacceptable. The only remaining piece of IGT's statement that Appellant wanted to rebut which was not already admitted as evidence or before the convening authority was her loss of trust in the Air Force, Airmen, and men in general. We find that IGT's personal sentiments are not ones to which Appellant could have materially responded. For these reasons, we find that Appellant has not established a colorable claim of prejudice.

## B. Claimed Ineffective Assistance of Counsel

Appellant next asserts that trial defense counsel was constitutionally ineffective by failing to provide him with IGT's post-trial matters and failing to notify him of his right to rebut those matters. We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). We consider the following questions to determine whether the presumption of competence has been overcome: (1) if the appellant's allegations are true, is there a reasonable explanation for counsel's actions; (2) if the appellant's allegations are true, did defense counsel's level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers; and (3) if defense counsel was ineffective, is there a reasonable probability that, absent the errors, there would have been a different result. *Id.* (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

We have already addressed how Appellant's signed acknowledgment compellingly demonstrates the improbability of Appellant's ineffective assistance of counsel claim. We have likewise determined Appellant failed to establish a colorable claim of prejudice. It follows that trial defense counsel has not been shown constitutionally ineffective by failing to inform Appellant of the victim's submission or of his opportunity to respond to the submission, as claimed. We therefore find Appellant's related allegation of ineffective assistance of counsel warrants no relief.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court