# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32597 (f rev)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Catarino L. LOPEZ, Jr.**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 9 July 2021

————————————

*Military Judge:* John C. Degnan; Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 16 April 2019 by SpCM convened at Joint Base Lewis-McChord, Washington. Sentence entered by military judge on 24 May 2019 and reentered on 5 January 2021: Bad-conduct discharge, confinement for 50 days, reduction to E-1, and forfeiture of $1,000.00 pay per month for 3 months.

*For Appellant:* Major Benjamin H. DeYoung, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge KEY joined. Senior Judge POSCH filed a separate opinion concurring in part and in the result.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

Appellant's case is before this court for the second time. A special court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA), of two specifications of failure to obey a lawful general regulation by wrongfully using an intoxicating substance on divers occasions, one specification of wrongful use of marijuana on divers occasions, and one specification of wrongful use of lysergic acid diethylamide (LSD), in violation of Articles 92 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for three months, forfeiture of $1,000.00 pay per month for three months, and reduction to the grade of E-1. The original convening authority signed a Decision on Action memorandum in which he stated Appellant's term of confinement was reduced to 50 days, and the trial military judge signed an entry of judgment (EoJ) reflecting the findings and modified sentence.

Appellant raised three issues on appeal to this court: (1) whether the convening authority erred by taking action prior to allowing trial defense counsel to raise and advocate additional clemency options upon trial counsel's completion of a substantial-assistance memorandum; (2) whether the Statement of Trial Results (STR) and EoJ signed by the military judge failed to accurately record the pleas and findings of the court; and (3) whether the conditions of Appellant's post-trial confinement were cruel and unusual in violation of the Eighth Amendment[3] and Article 55, UCMJ, 10 U.S.C. § 855, or rendered his sentence inappropriately severe.[4] However, upon our initial review we deferred consideration of these issues and remanded the record to the Chief Trial Judge,

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant pleaded guilty and was found guilty of the specification of wrongful use of LSD by exception, excepting the language "on divers occasions." The military judge found Appellant not guilty of the excepted language. The offenses for which Appellant was convicted were charged as having occurred between 1 May 2017 and 31 December 2018.

[3] U.S. CONST. amend. VIII.

[4] Appellant personally raises Issue (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Air Force Trial Judiciary, due to the convening authority's failure to take action on the entire sentence. *United States v. Lopez*, No. ACM S32597, 2020 CCA LEXIS 439 (A.F. Ct. Crim. App. 8 Dec. 2020) (unpub. op.).[5]

The record was returned to this court for completion of our review pursuant to Article 66, UCMJ, 10 U.S.C. § 866, and Appellant has not raised any additional assignments of error. On further review, we find no error that has materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant entered active duty with the Air Force in January 2016.[6] His first permanent duty station was Joint Base Lewis-McChord (JBLM), Washington. According to Appellant, at JBLM he felt anxious and depressed, and he began to regularly abuse alcohol. Eventually Appellant began to abuse other substances as well.

---

[5] This court issued its initial opinion in the instant case before the United States Court of Appeals for the Armed Forces (CAAF) issued its opinion in *United States v. Brubaker-Escobar*, ___ M.J. ___, No. 20-0345, 2021 CAAF LEXIS 508, at *8 (C.A.A.F. 4 Jun. 2021), which held that the portion of Executive Order 13,825, 83 Fed. Reg. 9889 (8 Mar. 2018), upon which this court based its opinion is unlawful to the extent it requires convening authorities to apply pre-1 January 2019 post-trial procedures "to cases in which no UCMJ action was taken before . . . January 1, 2019." The charges in Appellant's case were preferred on 7 March 2019, and we acknowledge this court's initial opinion in the instant case is inconsistent with *Brubaker-Escobar*. However, neither party appealed or sought reconsideration of this court's prior opinion, and, in accordance with the law of the case doctrine, the second convening authority Decision on Action memorandum and the corrected entry of judgment by the military judge created pursuant to this court's initial opinion as described below remain in effect. *See United States v. Erickson*, 65 M.J. 221, 224 n.1 (C.A.A.F. 2007).

> Where neither party appeals a ruling of the court below, that ruling will normally be regarded as the law of the case and binding upon the parties. . . . [The CAAF] will not review the lower court's ruling unless "the lower court's decision is 'clearly erroneous and would work a manifest injustice' if the parties were bound by it."

*Id.* (quoting *United States v. Doss*, 57 M.J. 182, 185 (C.A.A.F. 2002) (additional citation omitted)).

[6] The following summary is derived primarily from the stipulation of fact Appellant signed pursuant to his PTA and from Appellant's statements under oath during the military judge's guilty plea inquiry.

On multiple occasions between April and September 2018, Appellant abused muscle relaxants with two other Airmen by taking the relaxants with alcohol, contrary to directions, with the specific intent to alter his mood or function in violation of a lawful general regulation, specifically Air Force Instruction (AFI) 90-507, *Military Drug Demand Reduction Program*, ¶ 1.1.7 (22 Sep. 2014).[7] In June 2018, Appellant used LSD on one occasion with several other Airmen in his on-base dormitory. In approximately June or July 2018, Appellant used marijuana with two civilians. In December 2018, Appellant smoked marijuana again while on leave in Texas when a friend offered it to him. In July 2018, Appellant and two other Airmen bought kratom[8] at an off-base store near JBLM, and Appellant consumed the kratom at his dormitory room on JBLM. Appellant explained to the military judge that the kratom had a calming effect on him, and agreed that he ingested the substance in order to alter his mood or function in violation of AFI 90-507, ¶ 1.1.7. Appellant used kratom approximately seven times during 2018.

At trial, Appellant told the military judge through his unsworn statements that he used drugs, like alcohol, to "self-medicate" for anxiety and depression.

## II. DISCUSSION

### A. Convening Authority Action and Due Process

#### 1. Additional Background

Appellant's court-martial concluded on 16 April 2019. The military judge signed the STR on the same day.

On 9 May 2019, trial defense counsel, Captain (Capt) SC, submitted to the convening authority a written request for clemency consisting of a memorandum with several attachments. The memorandum noted that the PTA required the convening authority to reduce Appellant's term of confinement from three months to 60 days. Capt SC requested the convening authority "reduce [Appellant's] sentence of confinement and set aside his adjudged forfeitures." In support of this request, Capt SC asked the convening authority to consider Appellant's confinement conditions, the "life-long effects of his conviction," and Appellant's youth and alcohol dependency. With regard to Appellant's confine-

---

[7] Appellant explained to the military judge that on the first occasion, in April 2018, he obtained a pill from another Airman who had a prescription for muscle relaxants at the time. In May 2018, Appellant obtained his own prescription for muscle relaxants.

[8] Appellant explained to the military judge that kratom is "a root from a plant," sold in powder form to be mixed with liquids and ingested, and that it is a depressant that "mainly relaxes you and calms you down."

ment conditions, Capt SC stated Appellant "has been assisting the Government in the investigation and [p]rosecution of other members using, possessing, and distributing controlled substances at [JBLM]." Capt SC asserted Appellant's cooperation required that he be placed in solitary confinement for "protective custody." Although Capt SC referred to Appellant's cooperation with the Government, she did not mention any memorandum from trial counsel documenting Appellant's substantial assistance in the investigation and prosecution of other Air Force members.

Although unmentioned in Appellant's clemency submission, on 9 May 2019, the same day Capt SC signed her memorandum, the trial counsel in Appellant's court-martial, Capt TB, signed a substantial-assistance memorandum addressed to the convening authority. Capt TB recommended Appellant "be recognized for his substantial assistance in the prosecution" of one Airman and in the investigation of another. Capt TB's memorandum briefly described Appellant's involvement in each case, which "led directly to a finding of guilt" in one case and was "material in preparing charges" in the other. However, Capt TB did not identify what if any specific sentence relief she believed was appropriate in Appellant's case.

On 16 May 2019, the convening authority signed a Decision on Action memorandum, in which the convening authority stated he took "the following action on the sentence in this case: [ ] The confinement is reduced from three months to 50 days." The convening authority explained: "The adjudged sentence is reduced from three months to 60 days per the pretrial agreement. I am further reducing the period of confinement an additional 10 days based on the substantial assistance [Appellant] provided in the investigation and prosecution of other persons." The convening authority further stated that he had "consulted with [his] Staff Judge Advocate" (SJA) and "considered matters timely submitted by [Appellant] under R.C.M. 1106." The Defense received a copy of the Decision on Action memorandum the same day, 16 May 2019. On 24 May 2019, the military judge signed the initial EoJ recording the results of the court-martial, including the sentence as modified by the convening authority.

This court's prior opinion remanding the record resulted in the original convening authority's successor signing a new Decision on Action memorandum on 5 January 2021. Appellant's sentence to confinement was again reduced from three months to 50 days for the same reasons identified in the original action; in addition, this time the convening authority also "approve[d] the remainder of the sentence." On the same day, a military judge signed a "corrected" EoJ reflecting the results of the court-martial as modified by the convening authority's action. Appellant did not file a post-trial motion with the

military judge pursuant to R.C.M. 1104(b)(2)(B) within five days of receiving either of the convening authority actions.[9]

**2. Law**

The proper completion of post-trial processing is generally a question of law we review de novo. *United States v. Zegarrundo*, 77 M.J. 612, 613 (A.F. Ct. Crim. App. 2018) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Whether an accused has forfeited or waived an issue is also a question of law we review de novo. *See United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. . . . If an appellant has forfeited a right by failing to raise it at trial, we review for plain error." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008)) (additional citations omitted). In order to prevail under a plain error analysis, an appellant must demonstrate: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Kho*, 54 M.J. at 65 (citation omitted). In order to demonstrate prejudice in the context of a post-trial error, "whether that error is preserved or is otherwise considered under the plain error doctrine, an appellant must make 'some colorable showing of possible prejudice.'" *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65).[10]

---

[9] In *Brubaker-Escobar*, the CAAF indicated the military judge acted "prematurely" and "short-circuited" the appellant's right to file a motion regarding an alleged error with respect to convening authority action within five days of receiving the action, where the military judge entered judgment the day after the convening authority's decision on action. 2021 CAAF LEXIS 508, at *4; *but see* R.C.M. 1111(e)(2) ("[T]he judgment shall be entered as soon as practicable after the staff judge advocate or legal advisor notifies the military judge of the convening authority's post-trial action or decision to take no action . . . ."). However, Appellant has not alleged any error with respect to the fact that the military judge signed the corrected EoJ on the same day the successor convening authority signed the new Decision on Action memorandum, and we find no basis to direct corrective action or relief.

[10] Our colleague writing separately takes issue with the application of the "colorable showing of possible prejudice" standard to an alleged post-trial error that does not involve the preparation of a written SJA recommendation to the convening authority, and would apply the more general requirement than an appellant demonstrate material prejudice to a substantial right. *See* 10 U.S.C. § 859(a). However, the CAAF has indicated the "colorable showing" standard is a component of the test for material prejudice to an appellant's substantial rights under Article 59(a), UCMJ, in the post-trial

The Fifth Amendment[11] to the United States Constitution provides, *inter alia*, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."

In general, when an accused has been sentenced to a bad-conduct discharge, the convening authority may not modify the adjudged bad-conduct discharge, subject to two exceptions. R.C.M. 1109(c)(1). The first of these exceptions provides the convening authority may reduce, commute, or suspend the sentence, in whole or in part, upon the recommendation of the trial counsel who prosecuted the accused in recognition of the accused's provision of "substantial assistance in the criminal investigation or prosecution of another person." R.C.M. 1109(e)(1), (2). The convening authority is not so constrained with regard to the modification of adjudged confinement for six months or less. *See* R.C.M. 1109(c)(2).

"In determining whether to take action, or to decline taking action under [R.C.M. 1109], the convening authority shall consult with the [SJA] or legal advisor." R.C.M. 1109(d)(2). Before taking or declining to take action on the sentence, the convening authority shall consider matters timely submitted by the accused, and may consider, *inter alia*, "[s]uch other matters as the convening authority deems appropriate." R.C.M. 1109(d)(3)(A), (B)(iv). "If the convening authority decides to act on the sentence under this rule, such action shall be in writing and shall include a written statement explaining the action." R.C.M. 1109(g)(2). "[A] copy of such action shall be served on the accused . . . or on [his] counsel." R.C.M. 1109(h).

R.C.M. 1104(b)(2)(B) provides that either party may file a post-trial motion within five days of receiving the convening authority's action to address an asserted error in the convening authority's action.

---

context. *See, e.g.*, *United States v. Stefan*, 69 M.J. 256, 258–59 (C.A.A.F. 2010). Moreover, the rationale for creating this relatively lenient standard was recognition of the "highly discretionary" nature of the convening authority's clemency power. *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998) (quoting *United States v. Chatman*, 46 M.J. 321, 323–24 (C.A.A.F. 1997)). Although the scope of the convening authority's power to affect the adjudged findings and sentence in Appellant's case was significantly more limited than at the time *Wheelus* was decided, *see* 10 U.S.C. § 860a, a convening authority's decision whether or not to grant clemency remains highly discretionary. Accordingly, we continue to apply the "colorable showing of possible prejudice" standard to alleged errors affecting the convening authority's decision on action, as in the instant case.

[11] U.S. CONST. amend. V.

### 3. Analysis

#### a. Appellant's Argument

Appellant's first assignment of error is that the "convening authority erred in taking action in clemency prior to allowing trial defense counsel the opportunity to raise and advocate for new clemency options upon trial counsel's completion of a substantial-assistance memo, denying Appellant the right to due process." Essentially, Appellant contends the trial counsel's memorandum should have been served on the Defense prior to the convening authority making his decision on action, a right Appellant would have had under prior versions of the UCMJ and Rules for Courts-Martial. Appellant notes that the version of Article 60, UCMJ, 10 U.S.C. § 860, in effect when Appellant committed his offenses, which all occurred prior to 1 January 2019, required the convening authority to "obtain and consider the written recommendation of his [SJA] or legal officer" before taking action on any general court-martial or any special court-martial that included a bad-conduct discharge. 10 U.S.C. § 860(e) (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)). Similarly, the version of R.C.M. 1106 in effect prior to 1 January 2019 required the SJA to prepare a written recommendation for the convening authority regarding action, and to provide a copy of the recommendation to the accused and defense counsel prior to providing it to the convening authority. R.C.M. 1106(a), (d), (f). (2016 *MCM*). Appellant further quotes the United States Court of Appeals for the Armed Forces (CAAF) that the SJA's recommendation "plays a vital role in providing the convening authority with complete and accurate advice in the exercise of command discretion." *Scalo*, 60 M.J. at 436 (citation omitted).

Appellant acknowledges that the new Articles 60a and 60b, UCMJ, and the Rules for Courts-Martial that went into effect before the charges in Appellant's case were referred for trial no longer require *written* advice from the SJA to the convening authority regarding action, only that the convening authority consult with the SJA before taking action. *See* 10 U.S.C. §§ 860a, 860b; R.C.M. 1109(d)(2); Executive Order 13,825, § 2, 83 Fed. Reg. 9889 (8 Mar. 2018). However, in Appellant's view, therein lies the heart of the problem; he asserts that without a written SJA recommendation, this court can have no confidence the convening authority received complete and accurate advice. Appellant contends this concern is particularly acute in a case such as this where, he asserts, the trial counsel's substantial assistance memorandum expanded the convening authority's power to grant clemency to include the ability to modify his bad-conduct discharge. Appellant further argues that under the rules in effect prior to 1 January 2019, the substantial assistance memorandum would have been attached to the SJAR or to an addendum to it, and thus would have been provided to the Defense. Yet, he notes, in this case Capt SC's clemency submission on his behalf does not reference the substantial assistance memorandum or the

expanded clemency authority that he asserts it created. Appellant concludes that because "confusion exists regarding whether the [convening authority] considered all options available to him . . . to ensure basic due process and in an abundance of caution," this court should order new clemency and action or, in the alternative, moot any prejudice by disapproving the bad-conduct discharge.

We find Appellant is not entitled to relief.

### b. Standard of Review

The initial question regards our standard of review. Ordinarily, we review alleged post-trial errors de novo. *Zegarrundo*, 77 M.J. at 613 (citation omitted). However, R.C.M. 1104(b)(1)(E) permits the defense to submit a motion to the military judge regarding an allegation of error in the post-trial processing of the court-martial. Where such a motion involves "correct[ing] an error in the action of the convening authority," the motion "shall be filed within five days after the party receives the convening authority's action." R.C.M. 1104(b)(2)(B). Trial defense counsel was served with a copy of the convening authority's original Decision on Action memorandum on 16 May 2019, but the Defense made no motion alleging error within five days pursuant to R.C.M. 1104. Moreover, the Defense also did not file a motion after the second Decision on Action memorandum dated 5 January 2021; although the record does not contain specific documentation of receipt of the second Decision on Action memorandum, at a minimum defense counsel received it by 22 January 2021 when a copy of the record containing it was delivered to the Appellate Defense Division. Recognizing Appellant previously raised this issue in his assignments of error dated 18 September 2019, we do not find the issue waived, but we do find Appellant forfeited the issue by failing to timely file an objection with the military judge pursuant to R.C.M. 1104. Accordingly, we review for plain error.[12] *Cf. United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246, at *14–15 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.) (reviewing convening authority action for plain error where the defense failed to raise a motion pursuant to R.C.M. 1104(b)(2)(B)).

### c. Due Process

We find no error, plain or otherwise, with respect to Appellant's due process rights. Essentially, Appellant complains that the previous rules with regard to post-trial processing and clemency—whereby the SJA's advice to the convening authority would have been in writing and the Defense presumably would have received a copy of Capt TB's substantial assistance memorandum—are no

---

[12] Our application of the plain error standard is not determinative of the issue, as we would reach same result applying de novo review.

longer in effect. However, these processes are not guaranteed by the Constitution, and are no longer required by statute, executive order, or regulation. Clemency, within the bounds of the convening authority's statutory power, is a "highly discretionary Executive function," *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998) (citation omitted), and an accused's right to request it is entirely a creature of statute and regulation. There is no *constitutional* right to appeal the result of a criminal trial on the basis of legal error, much less to request clemency from a convening authority with regard to a lawfully imposed court-martial sentence. *See Abney v. United States*, 431 U.S. 651, 656 (1977) ("[I]t is well settled that there is no constitutional right to an appeal." (citation omitted)).

Therefore, the relevant question is whether the UCMJ provisions and Rules for Courts-Martial in effect during the post-trial stage were followed. As discussed below, the relatively minor errors in the post-trial process have either been corrected or pose no colorable possibility of prejudice to Appellant's rights. With respect to clemency, the successor convening authority indicated she consulted with her SJA and considered Appellant's clemency matters as required by R.C.M. 1109. Appellant has not demonstrated any error that possibly prejudiced his ability to request clemency from the convening authority. Accordingly, he is not entitled to relief.

**B. Statement of Trial Results and Entry of Judgment**

Appellant's brief identified an error in the STR with respect to Specification 3 of Charge II, which alleged Appellant wrongfully used LSD on divers occasions. The STR correctly recorded that Appellant pleaded guilty to the specification, except for the words "on divers occasions." The STR further recorded Appellant was found guilty of the specification, again except for the words "on divers occasions," but it indicated the excepted words were "Dismissed with Prejudice per PTA." The STR was erroneous in that it failed to record Appellant pleaded and was found "not guilty" to the excepted language, which had not been dismissed. The same error was repeated in the original EoJ.

On remand, the military judge corrected the error in the new EoJ. Accordingly, we find that aspect of Appellant's assignment of error moot.

The military judge did not correct the original, erroneous STR.[13] However, we find no colorable showing of possible prejudice resulting from that error.

---

[13] As we noted in our original opinion, the STR contained another error in that it "failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3)." *Lopez*, unpub. op. at *5 n.9 (citing *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per

*See Scalo*, 60 M.J. at 436–37. The new EoJ correctly "reflects the result of the court-martial, as modified by any post-trial actions, rulings, or orders." R.C.M. 1111(a)(2). The STR is essentially an interim document summarizing the result of the court-martial and related matters, not the final record of the outcome. Moreover, the STR correctly indicated the offenses of which Appellant had been found guilty, and we are confident the discrepancy as to how the excepted "on divers occasions" language was disposed of had no effect on Appellant's clemency request to the convening authority on either occasion. *Cf. United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.) (finding no colorable showing of possible prejudice from erroneous omission of convening command from STR and no need to direct correction of the STR).

## C. Post-Trial Confinement Conditions

### 1. Additional Background

On appeal, Appellant has provided a declaration describing the conditions of his post-trial confinement at the confinement facility at JBLM.[14] The following information is drawn from Appellant's declaration.

Appellant was confined in the facility for a total of 42 days, and spent more than 30 of those days in solitary confinement. While in solitary confinement, Appellant was allotted only one hour per day outside of his cell, and "more than half the time" he did not receive even that amount of time.

When Appellant was initially assessed after arriving at the facility, he stated in response to questions that he "was having thoughts of harming" himself, which led to his placement on a suicide watch and effectively extended his solitary confinement. In response to daily questioning, Appellant continued to report that he was having thoughts of self-harm, although he repeatedly told the guards he was not actually going to harm himself and that he wanted to be released from solitary confinement. Appellant's clothes were taken away and he was required to wear a smock for "almost [two] weeks," until he complied with the guards' suggestion that he no longer report having thoughts of self-harm, after which he received his clothing again.

Appellant also regularly asked when he could start to receive his "prescription medication" which helped alleviate his depression and suicidal thoughts. According to Appellant, he was initially told it "typically" took "about" three

curiam) (unpub. op.)). Although the error remains, we continue to find no prejudice to Appellant.

[14] We may consider matters outside the record of trial in order to resolve alleged violations of the Eighth Amendment and Article 55, UCMJ. *See United States v. Jessie*, 79 M.J. 437, 445 (C.A.A.F. 2020).

days to start receiving prescriptions. However, Appellant asserts it took two weeks before he received his prescription medications.

Appellant repeatedly told the guards he wanted to be released from solitary confinement. However, during the brief periods he was out of solitary confinement he was threatened and verbally and physically harassed by other confinees for being a "snitch" and for cooperating with the prosecution of other ongoing cases.

**2. Law**

We review de novo whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (citations omitted). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]."

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second alteration in original) (internal citations omitted).

Pursuant to our broad authority and mandate under Article 66(d), UCMJ, 10 U.S.C. § 866(d), to approve only so much of the sentence as we find appropriate in law and fact, we may grant sentence relief for a legal deficiency or error in an appellant's post-trial treatment that does not constitute an Eighth Amendment or Article 55, UCMJ, violation. *See United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). However, "[o]nly in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted).

### 3. Analysis

Appellant contends the conditions of his post-trial confinement violated the Eighth Amendment and satisfy the three-part test the CAAF articulated in *Lovett*. We address each element in turn.

Appellant contends he was denied "necessities" when he did not receive his prescribed medication during his initial two weeks in confinement. "Denial of adequate medical attention can constitute an Eighth Amendment or Article 55[, UCMJ] violation." *White*, 54 M.J. at 474 (citing *United States v. Sanchez*, 53 M.J. 393, 396 (C.A.A.F. 2000)). The standard is "reasonable" medical care rather than "perfect" or "optimal" care. *Id.* at 475 (citation omitted). Appellant provides little detail regarding the medication in question or its effects. He does not identify it other than as "prescription medication," and he does not describe its effects other than to say that his depression and suicidal thoughts without the medication were "more sever[e]" than they would have been with the medication. Nevertheless, for purposes of our analysis we accept that the denial of anti-depression medication can amount to an Eighth Amendment violation.

However, we find Appellant fails to satisfy *Lovett's* second prong. In the context of medical care, the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (footnote omitted) (citation omitted). "In order to state a cognizable claim" of medical mistreatment under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. We accept that Appellant did not receive his medicine during his first two weeks of confinement. However, Appellant also bears the burden to demonstrate the delay was caused either intentionally or by the deliberate indifference of confinement authorities. Appellant has failed to do so. Appellant's statement that an unidentified individual told him it "typically" took "about three days" to begin receiving prescriptions is insufficient to demonstrate the specific delay in his case was caused intentionally or by deliberate indifference.

Appellant contends the confinement authorities also demonstrated deliberate indifference by "imposing increasingly restrictive solitary confinement conditions," despite knowing it was having a deleterious effect on his mental health. We are not persuaded. By Appellant's own account, his solitary confinement was primarily due to concerns regarding his repeated expression of suicidal thoughts, and when Appellant was not in solitary confinement he was repeatedly subjected to verbal and physical abuse by other confinees. Under

these circumstances, we find Appellant has failed to demonstrate his restrictive conditions were motivated by an intent to harm him or by deliberate indifference to his well-being.

With regard to the third prong, assuming *arguendo* Appellant exhausted his administrative remedies at the confinement facilities—which is not clear—Appellant did not petition for relief pursuant to Article 138, UCMJ, 10 U.S.C. § 938. Appellant contends his clemency request, summarized *supra* in relation to his due process argument, "amounted to an Article 138, UCMJ, complaint." We disagree. Although Capt SC's clemency memorandum referred to Appellant's solitary confinement, it did not invoke or even mention Article 138, UCMJ, nor did it allege any "wrong[ ] by his commanding officer." 10 U.S.C. § 938. Instead, Capt SC's evident purpose in referring to Appellant's protective custody, which she attributed to Appellant's cooperation in the investigation and prosecution of other Airmen, was to motivate the convening authority to grant clemency, not to address an ongoing injustice. Thus, Appellant's clemency submission lacked both the form and substance of an Article 138, UCMJ, complaint, and was no substitute for it.

In the alternative, Appellant contends that the circumstances of his confinement were "unusual" such that he should be excused for not having exhausted his administrative remedies. He compares his situation to that in *United States v. Alexander-Lee*, where this court granted relief for violation of Article 12, UCMJ, 10 U.S.C. § 812, despite the appellant's failure to file a complaint with the confinement facility or submit an Article 138, UCMJ, complaint. No. ACM S31784, 2012 CCA LEXIS 95, at *9–11 (A.F. Ct. Crim. App. 16 Mar. 2012) (unpub. op.). However, Appellant's case is substantially unlike *Alexander-Lee*. In that case, "the appellant had no understanding of the legal significance of being confined with foreign nationals and his defense counsel was unaware of the situation." *Id.* at *9. Once the defense counsel was apprised, he "acted promptly by informing the convening authority of the situation in the clemency submission." *Id.* Moreover, under the "unusual circumstances" of the appellant's civilian confinement in that case, this court found an Article 138, UCMJ, complaint was not a "realistic" solution to the problem. In the instant case, Appellant was acutely aware of the allegedly unlawful conditions of his confinement, and there was no apparent impediment to him filing an Article 138, UCMJ, complaint. Moreover, unlike Alexander-Lee, Appellant was in military confinement, and there is no reason to doubt the chain of command would have been able to investigate and address any alleged illegalities. Furthermore, unlike the defense counsel in *Alexander-Lee*, when Capt SC described Appellant's confinement conditions in her clemency memorandum, she did not allege any unlawfulness was occurring.

Accordingly, Appellant has failed to demonstrate he is entitled to relief for the alleged violation of the Eighth Amendment and Article 55, UCMJ. In addition, we find Appellant's assertions do not warrant sentence relief under our Article 66(d), UCMJ, authority in the absence of such a violation.

### III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59 and 66, UCMJ, 10 U.S.C. §§ 859, 866. Accordingly, the findings and sentence are **AFFIRMED**.

POSCH, Senior Judge (concurring in part and in the result):

I write separately because I disagree with the opinion of the court's application of the test for prejudice—some colorable showing of possible prejudice in reliance on *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005)—for the claimed errors that Appellant believes occurred after sentence was announced and court adjourned.

The issue in *Scalo* was a deficiency "in the context of a post-trial recommendation error," which required that "an appellant must make 'some colorable showing of possible prejudice,'" to meet his "burden to establish that the error materially prejudiced a substantial right." *Id.* (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Before *Scalo*, the Court of Appeals for the Armed Forces relied on this test to evaluate whether an appellant was prejudiced by defects in the staff judge advocate's recommendation (SJAR), *see, e.g.*, *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998) (citing *United States v. Chatman*, 46 M.J. 321, 324 (C.A.A.F. 1997)), or in the context of the addendum to the SJAR, *see, e.g.*, *Chatman*, 46 M.J. at 324, but the supposed errors here are neither. My colleagues also rely on *United States v. Stefan*, 69 M.J. 256, 258 (C.A.A.F. 2010) for support, but *Stefan*, like *Chatman*, involved error in the context of the addendum to the SJAR.

The test to determine whether relief is warranted for procedural error is material prejudice to a substantial right. *See, e.g.*, *United States v. Alexander*, 61 M.J. 266, 269 (C.A.A.F. 2005). I join the opinion of the court in finding no

error that materially prejudiced a substantial right of Appellant, Articles 59 and 66, UCMJ, 10 U.S.C. §§ 859, 866, and affirm the findings and sentence.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court